### In re PERMAR PROVISIONS, INC., Debtor.

### Bankruptcy No. 184–41766–260.

United States Bankruptcy Court, E.D. New York.

Nov. 16, 1987.

Barst, Mukamal & Babitt by Nathan Fogelson, New York City, for trustee.

New York City Law Dept. by Cornelius F. Roche, New York City, for City of New York.

Carol Lilienfeld, New York City, for Chicago Title Ins. Co.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Chief Judge.

This case raises the question whether a postpetition, preconfirmation sale of the debtor's real property is "under a plan confirmed," thus exempt from local taxes as provided by section 1146(c) of the Bankruptcy Code.[1] This Court finds the sale is exempt from local taxes.

## FACTS

The debtor, Permar Provisions, Inc., sold and distributed wholesale meat products. It expanded its business, purchasing a meat processing plant in New York City and equipment. It executed to Banco de Ponce a purchase money mortgage on the building for $250,000 and a second mortgage on the machinery and building contents for an additional $250,000.

Thereafter Permar filed a petition in this Court for Chapter 11 relief. Its schedules valued the meat processing plant and contents at $716,000, approximately 70% of the value of the debtor's total estate. Permar continued its business in its new locale until increased losses caused it to leave its new building, wherein it continued distributing meat products from its older and smaller location. Eventually it ceased operations completely and remained as a dormant operation while seeking a way to effect a plan of reorganization.

During the course of the proceedings, the Court appointed a committee of unsecured creditors, which met with the debtor regarding its business. Apparently dissatisfied with the debtor's reorganization prospects, the Committee moved the Court to convert the debtor's Chapter 11 case to Chapter 7. As a result of the debtor's efforts to avoid the conversion, it met with the Committee to work out an acceptable plan of reorganization. The Committee was informed by the debtor that it intended to sell its newly acquired, vacant meat packing plant and contents to fund a plan of reorganization. In light of the foregoing, the Committee, through its counsel, then informed the creditor body of the debtor's intention. The creditors were also informed that the filing of a plan and requisite disclosure statement would occur following the sale. The Committee's motion to convert the case was adjourned *sine die*.[2]

Banco de Ponce then moved the Court to lift the automatic stay to foreclose the debtor's mortgages. However, when it became apparent the debtor did not need the real property, as evidenced by the debtor's

---

**1.** Section 1146(c) reads:

The issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

**2.** Had this Court granted the motion to convert the debtor's petition to Chapter 7, the general unsecured creditors would likely have received nothing, in contrast to the 10% payment they ultimately received under the confirmed plan, as hereinafter set forth. Total liens were approximately $750,000 while the gross proceeds from the sale of the building were $550,000.

vacating of the premises, the bank consented, along with the debtor and other lienors, to the sale of the debtor's building and contents, free and clear of all liens, the same to attach to the proceeds.

After notice to all creditors and parties in interest and a hearing, the Court auctioned the property to the highest bidder for $550,000. Stipulations invalidated liens of family members of the debtor's principals along with other liens, which totaled approximately $750,000, except those of Banco de Ponce, which were reduced by settlement to $350,000 and which were paid. After payment of all adjustments in connection with the sale, approximately $167,000 remained. Of this amount, pursuant to this Court's order, a portion was put in escrow with Chicago Title Insurance Company (Chicago Title) for disputed expenditures, including approximately $11,000 which New York City (City) sought as a real property transfer tax pending the determination of the present issue before this Court.[3] In accordance with the Court order confirming the sale, the debtor executed and delivered the deed to the purchaser at the closing. The deed was then recorded without payment of the City tax, the disputed funds being in escrow.

Thereafter and upon application of the Committee, the Court appointed a liquidating trustee pursuant to section 1104(a) of the Bankruptcy Code. The trustee then proposed a plan of liquidation. Accompanying the plan was a disclosure statement, as required by section 1125(b) of the Bankruptcy Code. The disclosure statement sets forth in the History and Organization section that "[t]he official creditor committee decided that it was necessary to cut operating losses by selling the building in the hope that enough money would be generated to file a Plan of Reorganization." After referring to the sale, the disclosure statement continues by stating: "The balance of the purchase price [of the property] has been turned over to the [l]iquidating [t]rustee.... From the purchase price of [$550,000], the Bank had agreed to accept [$350,000] in full payment and satisfaction for its mortgage on the real estate and its secured claim on all of the machinery and equipment." Finally the statement indicates: "The trustee now has in possession the sum of [$155,000] to fund a Plan of Reorganization."

Shortly thereafter, the trustee proposed an amended liquidating plan and an amended disclosure statement, by reason of the inability to obtain the necessary acceptances to confirm the first plan. The amended disclosure statement adopted the History and Organization section of the initial disclosure statement, except it reflected that the amount available to the trustee for distribution had increased approximately $34,600, arising out of the recovery of a preference. This additional money provided sufficient funds to warrant a 10% distribution to general unsecured creditors which was previously unavailable.

This Court confirmed the amended liquidating plan upon receipt of the requisite acceptances. Distribution was made thereunder, which included a 100% payment for the administrative, tax and secured claims and the 10% payment to the general unsecured claimants. The plan did not provide for payment to the debtor's shareholders.

The trustee moves this Court to order the escrow agent, Chicago Title, to release the funds for distribution, which funds the City seeks as a transfer tax on the sale of

---

**3.** This tax is sought when the consideration for the sale of an edifice exceeds $25,000. The consideration includes the price paid plus mortgages, liens or encumbrances upon the property, regardless of assumption. N.Y.C.Admin. Code § 11-2101(9). The price paid by the highest bidder for the debtor's property was $550,000. The City previously imposed a lien of $27,000 for outstanding real estate taxes. Thus, the consideration equaled $577,000. The tax rate when the consideration exceeds $500,000 is 2%. N.Y.C.Admin.Code § 11-2102. Two per-cent of $577,000 is $11,540. Such tax is statutorily due thirty days after delivery of the deed but before its recording. N.Y.C.Admin.Code § 11-2104.

It is noted that the New York City Administrative Code section 11-2104 does not exempt the grantee if the grantor fails to pay the tax. However, there is authority in bankruptcy decisions that the grantee is also exempt from such taxes. *In re CCA Partnership*, 70 B.R. 694 (Bkrtcy.Del. 1986), *aff'd*, 72 B.R. 765 (D.Del.1987); *In re Cantrup*, 53 B.R. 104 (Bkrtcy.Colo.1985).

the building and contents. The City and Chicago Title oppose the trustee's motion.

## DISCUSSION

Section 1146(c)[4] states that a transfer under a confirmed plan is exempt from a stamp or similar tax.[5] The City argues the sale is not under a confirmed plan because (1) the execution and delivery of the deed occurred more than one year prior to the confirmation of the plan and (2) the amended plan omits mention of the previous sale. At issue is the meaning of the section 1146(c) language, "under a plan."

The legislative history to section 1146(c) is scant. The Senate and House Reports to the Bankruptcy Code state "subsection [c] is derived from section 267 of the Bankruptcy Act." S.R. No. 989, 95th Cong., 2d Sess. 132 (1978); H.R. No. 595, 95th Cong., 1st Sess. 421 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5918, 6377. Section 267 had similar "under the plan" language as section 1146(c).[6] The direct predecessor of section 267, section 77B(f), however, had a different nexus: "to make effective any plan."[7] Several parallel tax statutes to section 267 had the same "to make effective any plan" language. *See* 6A Collier on Bankruptcy Para. 15.08 at 837–40 (14th ed. 1977). Collier concluded "the provisions of [section] 267 and those of the Internal Revenue Code with its amendments make it clear that the exemption conferred relates only to transactions

otherwise taxable which serve to execute or make effective a plan confirmed under Chapter X." 6A Collier on Bankruptcy Para. 15.08 at 840 (14th ed. 1977).

The applicable case law, with both pre- and postconfirmation sales of property supports the legislative history. *In re Jacoby–Bender, Inc.*, 758 F.2d 840 (2d Cir.1985), involved the postconfirmation sale of property.[8] The Second Circuit found the tax exemption applied since the "plan's consummation depended almost entirely upon the sale of the building." *Id.* at 841 (quoting *Jacoby–Bender*, 40 B.R. at 11 (Bkrtcy. E.D.N.Y.1984)).

Even though the confirmed plan in *Jacoby–Bender* did not mention the sale, the omission was not fatal to the tax exemption. Section 1146(c) "does not require that the reorganization plan include specifics…. Congress' apparent purpose in enacting section 1146 was to facilitate reorganizations through giving tax relief, a purpose served equally well when the reorganization plan leaves details to be settled in the future." *Jacoby–Bender*, 758 F.2d at 841.

*In re Smoss Enters. Corp.*, 54 B.R. 950 (E.D.N.Y.1985), involved the sale of property pursuant to a prepetition contract, prior to the confirmation of a liquidating plan.[9] The District Court rejected the City's nonapplicability contention as "plainly meritless," since section 1129(a)(11) allows liqui-

---

**4.** *Supra* note 1.

**5.** Judge Hall, after extensively researching stamp taxes, concluded "[t]he essential common element of stamp taxes is the imposition of the tax upon a written instrument representing a transfer or sale." *In re Jacoby–Bender, Inc.*, 40 B.R. 10, 14 (Bkrtcy.E.D.N.Y.1984), *aff'd mem.*, No. 84–1564 (E.D.N.Y. Sept. 18, 1984), *aff'd*, 758 F.2d 840 (2d Cir.1985).

**6.** Section 267 of the Bankruptcy Act provided:
The issuance, transfer, or exchange of securities, or the making or delivery of instruments of transfer under any plan confirmed under this chapter, shall be exempt from any stamp taxes now or hereafter imposed under the laws of the United States or any State. 11 U.S.C. § 667 (repealed), *reprinted in* 6A Collier on Bankruptcy Para. 15.08 at 836 (14th ed. 1977).

**7.** Section 77B(f), of the Act of June 7, 1934, read in pertinent part, that the tax provisions "shall not apply to the issuance, transfers, or exchanges of securities or making or delivery of conveyances to make effective any plan of reorganization confirmed under the provisions of this section." 11 U.S.C. § 207 (repealed), *reprinted in* 6A Collier on Bankruptcy Para. 15.08 at 836 (14th ed. 1977).

**8.** The debtor's plan in *Jacoby–Bender* was confirmed on November 10, 1983. The Bankruptcy Court approved the postconfirmation sale on January 12, 1984. 40 B.R. at 12, *aff'd mem.*, No. 84–1564 (E.D.N.Y. Sept. 18, 1984), *aff'd*, 758 F.2d 840 (2d Cir.1985).

**9.** On May 29, 1985 the debtor in *Smoss* sold the subject property. On September 11, 1985, the Bankruptcy Court confirmed the debtor's plan. 54 B.R. at 951.

dating plans to be confirmed and section 1146(c) only requires a section 1129 confirmed plan exist for a tax exemption to apply.[10] The District Court found the sale was under a plan since "the transfer of the property was essential to the confirmation of the plan." *Id.* at 951.

The preconfirmation sale in this case is factually akin to *Smoss*, although the same legal standard exists in *Smoss* and *Jacoby–Bender:* whether the sale of "property is essential to the confirmation of the plan." *Smoss*, 54 B.R. at 951: *accord Jacoby–Bender*, 758 F.2d at 841.

 Although the amended disclosure statement, incorporating relevant parts of the initial disclosure statement, states the sale of the building would fund the plan, such statements alone, made after the sale and before the confirmation of the plan, do not satisfy the legal standard of *Smoss* or *Jacoby–Bender.*

 However, as noted *supra,* the Creditors' Committee realized shortly after its inception the future sale of the building would fund a plan, enabling it to be confirmed. The sale yielded $550,000. With the net proceeds the trustee settled the secured claim of the bank, which previously had sought to lift the automatic stay and foreclose on the debtor's mortgages. This settlement with the largest creditor facilitated the confirmation of the plan.

The remaining proceeds, approximately $150,000 after expenses, constituted approximately 75% of the estate's funds which the trustee was required to distribute under the plan. From those funds, the trustee paid the administrative, tax and remaining secured claimants 100% of their claims and 10% to the general unsecured creditors. Thus, absent the sale of the real property, in all probability, the plan would not have been confirmed.

10. The legislative history of section 1146(c) supports *Smoss'* conclusion that a tax exemption is available under a liquidating plan. Initially, under section 77(B) a tax exemption was available only with a reorganizing plan. *Supra* note 7. However, section 267 eliminated the express requirement of a reorganizing plan by permitting "any plan confirmed under [Chapter X]."

By reason of the foregoing, this Court concludes that the sale was "under a plan", thus exempting the local tax. The escrow agent is directed to release the applicable funds to the trustee for further distribution pursuant to the confirmed plan.

SO ORDERED.

*Supra* note 6. Section 216(10) of Chapter X of the Bankruptcy Act allowed "the sale of or transfer of all or any part of [the debtor's] property." 11 U.S.C. § 616(10) (repealed), *reprinted in* 6A Collier on Bankruptcy Para. 10.19 at 88 (14th ed. 1977); *accord* W. Norton, Norton Bankruptcy Law and Practice § 59.10 & n. 2 (1986).