**In re HECHINGER INVESTMENT COMPANY OF DELAWARE, INC., et al., Debtors.**

**Baltimore County, Maryland, et al., Appellants,**

**v.**

**Hechinger Investment Company of Delaware, Inc., et al., Appellees.**

**Bankruptcy No. 99–2261 (PJW). Civ.A. No. 01–121–GMS. Adversary No. 00–72.**

United States District Court, D. Delaware.

March 18, 2002.

Mark David Collins, Richard Layton & Finger, Wilmington, DE, for debtors.

Jane Brady, Attorney General, Department of Justice, Wilmington, DE, Allison E. Reardon, Deputy Attorney General, for defendant.

Patricia A. Staiano, Philadelphia, PA, U.S. Trustee.

*MEMORANDUM AND ORDER*

SLEET, District Judge.

## I. INTRODUCTION

On June 11, 1999, Hechinger Investment Company of Delaware, Inc. ("Hechinger") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Hechinger subsequently filed two motions re-questing that the Bankruptcy Court enter a declaration that certain real property transfers were exempt from state transfer and recording taxes pursuant to § 1146(c) of the Bankruptcy Code. In a Memorandum Opinion dated October 10, 2000, the Bankruptcy Court granted the requested Section 1146(c) relief.[1] *See In re Hechinger Invest. Co. of Del., Inc.*, 254 B.R. 306 (Bankr.D.Del.2000).

The State of Maryland (the "State") and several Maryland counties (collectively "the Taxing Authorities") appealed this decision on February 21, 2001.[2]

## II. STANDARD OF REVIEW

In reviewing a case on appeal, the Bankruptcy Court's factual determinations will not be set aside unless they are clearly erroneous. *See Mellon Bank, N.A. v. Metro Comm., Inc.*, 945 F.2d 635, 641 (3d Cir.1991), *cert. denied*, 503 U.S. 937, 112 S.Ct. 1476, 117 L.Ed.2d 620, (1992). Conversely, a Bankruptcy Court's conclusions of law are subject to plenary review. *See Metro Comm., Inc.*, 945 F.2d at 641. Mixed questions of law and fact are subject to a "mixed standard of review." *See id.* at 641–42. Under this "mixed standard of review," the appellate court accepts findings of "historical or narrative facts unless clearly erroneous, but exercise[s] plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to historical facts." *Id.*

## III. DISCUSSION

The Taxing Authorities appeal from the Bankruptcy Court's opinion on three grounds.[3] First, the State argues that

---

1. By Order dated January 23, 2001, the Bankruptcy Court revised its October 10, 2000 Order.

2. The counties are Prince George's County, Montgomery County, and Baltimore County.

3. The facts surrounding these issues are fully set forth in the Bankruptcy Court's opinion and need not be repeated here.

Hechinger's request for a determination that its sales of realty were exempt from transfer taxes is a "suit against a state" under the Eleventh Amendment. Second, the Taxing Authorities maintain that the Tax Injunction Act, 28 U.S.C. § 1341, prevents the court from adjudicating Hechinger's tax exemption under Section 1146(c). Finally, they argue that Hechinger's sale of its interests in realty were not exempt from transfer taxes under Section 1146(c). The court will address each of these issues in turn.

## A. Eleventh Amendment

■ The State argues that Hechinger's motions are barred by the Eleventh Amendment because the relief requested would bind the State. Specifically, it argues that the effect of the motions is to preclude Maryland from collecting revenue. For the reasons set forth in the Bankruptcy Court's opinion, the court must disagree with the State's position.

■ As they did below, the State relies on the Fourth Circuit's opinion in *In re NVR, L.P.* in support of its argument. 189 F.3d 442 (4th Cir.1999). As the Bankruptcy Court correctly reasoned, however, *In re NVR* is distinguishable from the present case because the debtor there sought a direct recovery from the state's treasury. *See In re NVR,* 189 F.3d at 453–54. Thus, the court there was required to have jurisdiction over the State in order to adjudicate the claims. *See id.* at 453. Here, however, and as the Bankruptcy Court noted, "the basis of a State's Eleventh Amendment immunity is its sovereignty, which is only violated if the [c]ourt exercises involuntary jurisdiction over the State *qua* State. A declaratory ruling interpreting bankruptcy law as it

applies to transfers of the Debtors' real property interests is based on the [c]ourt's jurisdiction over the Debtors and their estates." *In re Hechinger,* 254 B.R. at 314. Thus, a proceeding where the bankruptcy court is not required to exercise jurisdiction over the State is not a suit against the State within the meaning of the Eleventh Amendment. *See In re Collins,* 173 F.3d 924, 930–31 (4th Cir.1999).

In the present case, the State was not named as a defendant, nor was it served with a summons. Instead, the Bankruptcy Court's jurisdiction was based on its power to interpret the bankruptcy laws as they apply to the debtors and their estates. Thus, the court agrees with the Bankruptcy Court's analysis leading to its conclusion that this action is not a suit against the state within the meaning of the Eleventh Amendment. Accordingly, the court adopts the Bankruptcy Court's well-reasoned explanation and holding on this issue.

## B. Tax Injunction Act

■ The Taxing Authorities next argue that the Tax Injunction Act, 28 U.S.C. § 1341, bars the Bankruptcy Court from ruling on Hechinger's tax liability.[4] They argue that the effect of Hechinger's motions is to prevent them from demanding payment of recording taxes. Finally, they claim that Section 505 of the Bankruptcy Code does not permit a Bankruptcy Court to enjoin the collection of a tax unless it is related to a claim against the debtor or its estate.

■ As the Bankruptcy Court appropriately noted, Section 505(a) "specifically grants the court authority to determine the amount or legality of any tax ...." *Id.*

---

**4.** The Tax Injunction Act states that federal courts "should not enjoin, suspend or restrain the assessment, levy and collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such States." 28 U.S.C. § 1341.

at 315. The Bankruptcy Court continued, "[t]here is no requirement in [Section] 505 that a debtor must exhaust available state law remedies as a precondition for obtaining a bankruptcy ruling on such liability." *Id; see also In re Stoecker*, 179 F.3d 546, 549 (7th Cir.1999)(Posner, J.) (stating that, "[i]f federal courts could not determine the debtor's liability for state taxes—if they had to abstain pending a determination of that liability in state court—bankruptcy proceedings would be even more protracted than they are.")

Further, Hechinger's motion is not a request to determine the tax liability of individuals or entities other than Hechinger. Thus, the Taxing Authorities' argument that a Bankruptcy Court's ability to determine the tax liability of a non-debtor entity under Section 505 is limited remains unpersuasive.

Finally, the Bankruptcy Court accurately concluded that a State court cannot offer a "plain, speedy and efficient remedy" as to the tax exemption in 1146(c) because 1146(c) arises under the Bankruptcy Court's exclusive and original jurisdiction under Title 11. Thus, the Tax Injunction Act cannot apply to this situation.

Following the reasoning of Bankruptcy Court, the court concludes that the Tax Injunction Act did not bar the Bankruptcy Court from ruling on Hechinger's motion.

### C. Transfers Under Section 1146(c)

 Finally, the Taxing Authorities contend that Section 1146(c) does not apply to a transfer that occurs prior to confirmation of the plan. The court disagrees.

In concluding that Section 1146(c) applies where a transfer is an essential component of the plan confirmation, the court recognizes that a split of authority exists on this issue. *See City of New York v. Jacoby–Bender, Inc.*, 758 F.2d 840, 842 (2d Cir.1985) (holding that, where a transfer is necessary to the consummation of a plan, the transfer is "under a plan")[5]; *In re NVR Homes, Inc.*, 189 F.3d 442, 457 (4th Cir.1999) (holding that "under a plan confirmed" requires plan confirmation as a precondition to eligibility for the exemption). Acknowledging the ambiguity in the statutory language, the court concludes that the Second Circuit's reading most comports with the purpose of 1146(c).

 The Bankruptcy Court stressed that "Congress apparently enacted [Section] 1146(c) to encourage Chapter 11 plans by providing Chapter 11 debtors with tax relief when they are compelled by business realities to sell certain assets." *In re Hechinger*, 254 B.R. at 317. In accordance with this goal, the appropriate reading of Section 1446(c) would require only that a plan be ultimately confirmed. Thus, it is the fact of plan confirmation, rather than its timing, that is critical. To hold that Section 1146(c) is applicable only to post-confirmation transfers would undermine the Section's purpose. *See In re Lopez Dev., Inc.*, 154 B.R. 607, 609 n. 3 (Bankr.S.D.Fla.1993) (rejecting the proposition that Section 1146(c) is applicable only to post-confirmation transfers as such a reading would not facilitate Chapter 11 plans.)

 Moreover, although in *In re NVR*, the Fourth Circuit partially based its reasoning on the plain meaning and ordinary

---

**5.** The court recognizes that, while *Jacoby–Bender* itself did not concern a pre-confirmation sale, courts following its reasoning have applied Section 1146(c) to such sales. *See e.g., In re Permar Provisions, Inc.*, 79 B.R. 530,

534 (Bankr.E.D.N.Y.1987); *In re Smoss Enters. Corp.*, 54 B.R. 950 (E.D.N.Y.1985), *aff'd*, 1986 U.S. Dist. LEXIS 28677 (2d Cir. March 31, 1986).

usage of the word "under," the court remains unpersuaded that the inquiry must end there.[6] Rather, it is clear that courts should not undermine the legislative purpose in enacting a statute by construing its meaning too narrowly or literally. *See In re CCA P'rship,* 70 B.R. 696, 698 (Bankr. D.Del.1987), *aff'd,* 72 B.R. 765 (D.Del. 1987). As the court stated above, to restrict Section 1146(c) to post-confirmation transfers would plainly undermine the purpose of facilitating Chapter 11 plans.

Finally, the court finds persuasive the Bankruptcy Court's view that it is doubtful that Congress would have intended the phrase "under a plan confirmed" to mechanically apply only to post-confirmation transfers. Indeed, when Congress has intended its words to have just that effect, it has stated that intent explicitly. *See, e.g.,* 11 U.S.C. § 1104(a) ("At any time after the commencement of the case but before confirmation of a plan ....."); 11 U.S.C. § 1105 ("At any time before confirmation of a plan ....")

In so holding, the court again stresses the Bankruptcy Court's view that not all pre-confirmation transfers fall within Section 1146(c). Rather, the transfers must be necessary or essential to confirmation. *See In re Hechinger,* 254 B.R. at 320; *see also In re Permar Provisions, Inc.,* 79 B.R. 530, 534 (Bankr.E.D.N.Y.1987). This is an important restriction because limiting transfers to those essential for the plan ensures that the bankruptcy court retains jurisdiction.[7] The transfers at issue here are clearly necessary to the plan because the proceeds of those transfers are to be used for funding Hechinger's plan.

Adopting the Bankruptcy Court's reasoning, the court concludes that Section 1146(c) applies to pre-confirmation transfers essential to a plan that is ultimately confirmed.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The October 10, 2000 decision of the Bankruptcy Court for the District of Delaware is AFFIRMED.

---

**6.** Relying on a dictionary definition, the Fourth Circuit determined that "under" meant "inferior" or "authorized by." It then concluded that a transfer could not be authorized by a plan that did not exist. *See In re NVR,* 189 F.3d at 457.

**7.** Notably, the Fourth Circuit found it irrelevant whether the transfer was necessary or essential to the plan, so long as it took place post-confirmation. *See In re NVR,* 189 F.3d at 456.