OAKES, Circuit Judge:
 

 The City of New York appeals an order of the United States District Court for the Eastern District of New York, Frank X. Altimari, Judge, affirming a decision of the United States Bankruptcy Court, Robert J. Hall, Bankruptcy Judge, exempting the debtor, Jacoby-Bender, Inc., in a Chapter 11 reorganization, from payment of the New York City Real Property Transfer Tax, New York, N.Y., Admin.Code § 1146-2.0 (1984), on the delivery of a deed transferring a building to The Hearst Corporation. 40 B.R. 10. The bankruptcy court held that the delivery occurred under a confirmed reorganization plan and was thus exempt from all stamp taxes or similar taxes pursuant to 11 U.S.C. § 1146(c) (1982). We affirm.
 

 The City advances two arguments. First, it argues that the delivery was not “under” the plan as required by 11 U.S.C. § 1146(c) because the plan did not mention any instrument of transfer and did not give the debtor the authority to make the specific sale. Because the debtor sought separate court approval for the sale, the City contends that the debtor made the transfer not under the plan but under 11 U.S.C. § 363(b), which permits the trustee in bankruptcy to sell property of the estate after notice and hearing. We disagree. The statute does not require that the reorganization plan include specifics. The City articulates no policy reason why Congress would have required specifics; indeed, Congress’s apparent purpose in enacting section 1146 was to facilitate reorganizations through giving tax relief, a purpose served equally well when the reorganization plan leaves details to be settled in the future. Here, as the bankruptcy court found, “the plan’s consummation depended almost entirely upon the sale of the building,” the sale in turn depending upon the delivery of the deed. That the plan did not empower the debtor to make a specific sale or deliver a specific deed is. irrelevant to our determination that the delivery of the deed took place “under” the plan within the meaning of section 1146(c).
 

 Nor is this conclusion changed by the legislative history of the Bankruptcy Code. The Report of the House Judiciary Committee stated:
 

 Another provision that affects the method of taxation in bankruptcy applies only in chapter 11. Section 1146(c) of title 11 is modeled after section 267 of the Bankruptcy Act which exempts any security or transfer instrument dealt with under a confirmed chapter X plan from any State or Federal stamp tax. Section 1146(c) of title 11 broadens the exemption to any stamp tax or similar
 
 *842
 
 tax on a security or a transfer instrument dealt with under the consolidated chapter 11. No opposition has been voiced with respect to this section.
 

 H.R.Rep. No. 595, 95th Cong., 1st Sess. 281 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6238. The City urges that a transfer instrument is not “dealt with” under a plan unless the plan mentions the instrument in so many words. On the contrary, where, as here, a transfer, and hence an instrument of transfer, is necessary to the consummation of a plan, the plan seems implicitly to have “dealt with” the transfer instrument.
 

 Second, the City argues that section 1146(c) exempts only transfers either to a reorganized debtor or to a corporation specially organized under the debtor’s plan, not to an unrelated third party. To support this argument, the City traces a multi-step analytical path through the statute. Proposing that “transfer” must have the same meaning in section 1146 that it has in section 1123, the section illustrating the different means of executing a reorganization plan, the City notes that section 1123(a)(5)(B) refers only to transfers made “to one or more entities, whether organized before or after the confirmation of such plan,” and that section 1123(a)(6) requires corporate entities referred to in section 1123(a)(5)(B) to include certain restrictions in their charters, thus implicitly proving that section 1123(a)(5)(B) encompasses only transfers made to corporations chartered during reorganization proceedings, not to preexistent third-party corporations. According to the City, section 1123(a)(6) clarifies that the phrase “whether organized before or after the confirmation of such plan” in section 1123(a)(5)(B) serves to limit the kinds of entities to which a “transfer” can be made. Ergo, the argument runs, Congress also intended to limit section 1146(c) transfers to those made to either the reorganized corporation or a corporation organized under the debtor’s plan.
 

 We cannot accept this convoluted statutory interpretation. The City’s argument that section 1123 narrows the meaning of “transfer” is fundamentally flawed. Far from narrowing the meaning, section 1123(a)(5)(B) evidences Congress’s understanding that “transfer” is a word of broad meaning: in order to specify a certain type of transfer, Congress there added the limiting phrase “to one or more entities, whether organized before or after the confirmation of such plan.” In the absence of a similar phrase restricting the types of transfers to which section 1146(c) refers, we believe that Congress intended the word “transfer” there to have its ordinary meaning.
 

 Nor can it be said that because section 1123(a)(5)(B) refers to a “transfer” and subparagraph (D) refers to a “sale” (of all or part of the property of the estate), the term “transfer” in section 1146 does not relate to a sale. Quite clearly, 11 U.S.C. § 1146(c) of the Bankruptcy Code relates back, so far as state and local taxes are concerned, to section 267 of Chapter X of the old Bankruptcy Act. H.R.Rep. No. 595, 95th Cong., 1st Sess. 421 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong.
 
 &
 
 Ad.News 5963, 6377;
 
 see also
 
 5 Collier on Bankruptcy ¶ 1146.01, at 1146-2 to 1146-4 (15th ed. 1984). Old section 267, as is made clear by its statutory derivations, 6A Collier on Bankruptcy 1115.08, at 836-40 (14th ed. 1977), related to transactions, in the treatise’s words, “which serve to execute or make effective a plan confirmed under Chapter X.”
 
 Id.
 
 at 840. A sale in general, following on confirmation of a plan, serves to make the plan effective. At the least, this sale did.
 

 Order affirmed.