In re 310 ASSOCIATES, L.P., Debtor.

**New York City Department of Finance, Appellant,**

v.

**310 Associates, L.P., Appellee.**

**No. 01 Civ. 10199(MGC).**

United States District Court, S.D. New York.

Aug. 23, 2002.

Michael A. Cardozo, Corporation Counsel of the City of New York, New York City Law Department, New York City, By Gabriela P. Cacuci, for Appellant.

Kensington & Ressler, L.L.C., New York City, By Ira R. Abel, Michael J. Venditto, for Appellee.

## OPINION

CEDARBAUM, District Judge.

The New York City Department of Finance (the "City") appeals from an order of the Bankruptcy Court. In the proceedings below, the Bankruptcy Court granted 310 Associates, L.P. ("debtor") an exemption, pursuant to 11 U.S.C. § 1146(c), from payment of municipal real estate transfer taxes. The City argues that the Bankruptcy Court erred in granting the exemption, because 1) the transfer occurred before the debtor had even proposed a plan of confirmation, and 2) section 1146(c) does not apply to a liquidating reorganization. For the reasons that follow, the order of the Bankruptcy Court is reversed.

## BACKGROUND

### The Factual Background

On May 11, 2001, the debtor, a New York limited partnership, filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Chapter 11"). Debtor owned and operated commercial buildings located at 310–318 West 53rd Street in Manhattan, New York (the "property"). The property was its principal asset, and the rental income from the property was its only significant income. Prior to the bankruptcy filing, the rental income from the property was insufficient to pay either real estate taxes or debt service to the five secured creditors holding mortgages on the property.

On October 11, 2000, the debtor entered into a contract with Richard Kramisen for the transfer of the property, for a total of $3,100,000. The contract provided for Kramisen to pay $100,000 upon execution of the contract, and an additional $50,000 on or before October 23, 2000. The remaining balance, $2,950,000, was to be paid at closing. The contract set the closing date as January 16, 2001. At Kramisen's request, the debtor moved the closing date to March 15, 2001. Time was of the essence for Kramisen to close title on March 15, 2001.

On February 6, 2001, the debtor entered into a "backup" contract of sale with GEY Associates General Partnership ("GEY") conditioned on the termination of the Kramisen contract. GEY agreed to pay the same price as Kramisen, but promised a higher down payment, $300,000.

According to the debtor, Kramisen failed to provide the balance due on March 15,

2001. Instead, Kramisen commenced an action for specific performance in New York Supreme Court and filed a notice of pendency against the property in connection with the action.

The debtor then moved forward with the transfer of the property to GEY. However, on April 25, 2001, the fourth mortgagee obtained a judgment of foreclosure against the property. Because of the judgment of foreclosure and the notice of pendency, the debtor filed for reorganization under Chapter 11 on May 11, 2001.

**The Bankruptcy Proceedings Below**

On June 7, 2001, the debtor filed an application for permission, pursuant to section 363, to transfer the property to GEY or any other entity making a higher and better offer. On June 8, 2001, the bankruptcy judge authorized the debtor to conduct a public auction of the property, and scheduled a hearing for July 10, 2001 to decide any issues relating to the auction.

On June 26, 2001, the City filed a Limited Objection to the debtor's application. The City argued that the transfer of the property should not be exempt from the New York City Real Property Transfer Tax or any other applicable "stamp or similar tax" pursuant to 11 U.S.C. § 1146(c). In the objection, the City argued that the exemption of section 1146(c) does not apply to a transfer made prior to confirmation of a plan of reorganization.

On July 2, 2001, in a meeting with debtor's counsel, Kramisen offered to bid $100,000 above GEY's contract price. On July 9, 2001, debtor filed an amended application, asking the Bankruptcy Court to recommence the auction on revised terms and to vacate the July 8, 2001 order. In the amended application, the debtor stated:

A sale of the Property will generate substantially all of the funds required to confirm a plan of reorganization in this case. The Debtor is, in essence, engaged in a liquidating reorganization under chapter 11.

On July 18, 2001, the bankruptcy judge vacated his July 8, 2001 Order, and scheduled a hearing to consider all objections to the auction, including the City's objection. At the hearing on August 7, 2001, he found the Kramisen offer to be the best offer and ordered the property transferred to Kramisen. He also overruled the City's objection, stating:

I would...consider myself better guided by the Second Circuit's decision in *Jacoby–Bender*, even though I will grant *Jacoby–Bender* doesn't take you across the goal line in terms of all of the points that are being made today, and more particularly, Judge Walsh's decision in *Heckinger* [sic], Judge Nickerson's decision in *Smoss*, which I regard as good law whether or not I must close my eyes to the fact that the Second Circuit affirmed it without decision and Judge Duberstein's decision in *Permar.*

With that said, if the Debtor had not offered to escrow the funds, I would request it. I think it is appropriate to escrow funds sufficient in amount to satisfy the stamp tax claim for two reasons:

One, a condition subsequent, the failure to consummate a plan of reorganization; and, two, in essence to protect the rights of the City if it wants to take me up on appeal.

On August 13, 2001, the bankruptcy judge entered an order approving the transfer agreement between the debtor and Kramisen. The order granted the debtor relief from transfer taxes pursuant to section 1146(c). The order also specified as follows:

...As soon as practicable after the Closing, the Debtor shall be, and hereby is, authorized to deposit in a separate,

interest bearing escrow account, monies from the Account (as defined hereinbelow [sic]), earmarked "310 Associates, L.P.—City 1146(c) taxes," the sum of $100,000, or such other amount as may be necessary (the "Escrowed Funds") to pay any City real property transfer tax or any other applicable City stamp or similar tax, and any potential interest and/or penalties thereon that may be due on the recordation of any documents or instruments reflecting the sale of the Assets subject to this Order.

. . . .

. . . [I]f a Plan of Reorganization in this case ultimately is not confirmed, the City may apply to this Court for appropriate relief, and this Order is without prejudice to the rights of the City in such eventuality.

This appeal followed.

At oral argument seven months after the bankruptcy judge granted exemption from city taxes, debtor's counsel admitted that no plan of reorganization had yet been drafted.

## DISCUSSION

■ When reviewing an order of a bankruptcy court on appeal, a district court reviews questions of law, as well as questions of mixed fact and law, *de novo. Bagel Bros. Maple, Inc. v. Ohio Farmers, Inc.,* 279 B.R. 55, 61 (W.D.N.Y.2002) (citing *In re United States Lines, Inc.,* 197 F.3d 631, 640–41 (2d Cir.1999)).

11 U.S.C. § 1146(c) provides:

The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

11 U.S.C. § 1146(c). The parties agree that the taxes at issue in this case are "stamp tax[es] or similar tax[es]" within the meaning of section 1146(c).

■ The issue on this appeal is whether the transfer of the debtor's property was "under a plan confirmed" within the meaning of section 1146(c). The debtor had not even drafted a plan of reorganization at the time of the transfer. Debtor contends that a transfer can be "under a plan confirmed" even if a plan has not yet been drafted at the time of the transfer. However, neither the language of the statute nor the cases cited by the debtor supports such an interpretation.

## Statutory Language

■ When interpreting a statute, a district court must first determine whether the language of the statute has a plain and unambiguous meaning applicable to the case. *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). In making that determination, a court should examine the language as used in the context of both the particular section and the statute as a whole. *Id.*

Section 1146(c) applies to transfers "under a plan confirmed." Debtor argues that if a transfer is "essential to or an important component of the plan process, then the transfer is 'under' a plan within the meaning of Section 1146(c)." I need not determine whether this interpretation is supported by the language of the statute, because the transfer in this case was not an "essential" or "important" component of any plan at the time the transfer took place. At oral argument, counsel for debtor admitted that no plan of reorganization had even been drafted at the time of the transfer. Indeed, no draft existed as of the date of oral argument of this appeal, seven months after the transfer was approved by the Bankruptcy Court and seven months after the sale took place.

Thus, debtor is forced to argue that section 1146(c) applies to any transfer that is later determined to be an essential or important component of a plan, no matter how long the delay between the transfer and the drafting of a plan. This interpretation of section 1146(c) is contradicted by the plain meaning of the statutory language. The *American Heritage Dictionary* defines the term "under" as "[w]ith the authorization of." *The American Heritage Dictionary* (4th ed.2000). The *Oxford English Dictionary* defines "under" as "inferior; subordinate; of lower rank or position." *Oxford English Dictionary* (2d ed.1989). A transfer cannot take place with the authorization of a plan that has not been drafted. Nor can a transfer be inferior or subordinate to a plan that has not been drafted. To determine otherwise would render both the words "plan" and "confirmed" in section 1146(c) meaningless. Any debtor could claim that a transfer will be important to a future plan of reorganization, without knowing anything about the substance of that plan. If Congress intended this to be sufficient, it need not have included the phrase "a plan confirmed" in section 1146(c) at all.

The record shows that the bankruptcy judge had similar concerns about this transfer. As noted above, the bankruptcy judge required the debtor to deposit a sum of money into an escrow account because of the possibility that there would never be a confirmed plan of reorganization. However, the City should not be required to wait until some indeterminate time when there may be a plan before collecting the taxes which it was entitled to collect at the time of the transfer.

█ The issue I decide today is a narrow one. The clear language of section 1146(c) states that only transfers occurring "under a plan confirmed" are exempt from taxation. A transfer cannot be "under a plan confirmed" if, at the time of the transfer, no plan has been drafted. It is therefore not necessary to decide whether section 1146(c) exempts from taxation a transfer that occurs after a plan has been introduced but not yet confirmed.

**Case Law**

There is no precedent in the Second Circuit for application of section 1146(c)'s exemption to the transfer in this case. Debtor relies principally on the Second Circuit's rulings in *In re Jacoby–Bender*, 758 F.2d 840 (2d Cir.1985) and *In re 995 Fifth Avenue Assoc.*, 963 F.2d 503 (2d Cir.1992). Neither case stands for the proposition that a transfer is "under a plan confirmed" if a plan is drafted long after the transfer. Nor has any other court in this district so held.

In *Jacoby–Bender*, the debtor negotiated the sale of a building. Its plan of reorganization provided for implementation of the plan through the sale of the building. Following confirmation of the plan, the Bankruptcy Court exempted the sale from New York State and City recordation taxes, *In re Jacoby–Bender, Inc.*, 40 B.R. 10 (Bankr.E.D.N.Y.1984), and the district court affirmed. On appeal, the City argued that the sale was not under a plan confirmed because "the plan did not mention any instrument of transfer and did not give the debtor the authority to make the specific sale." *Jacoby–Bender*, 758 F.2d at 841. The Second Circuit disagreed and approved the decision of the Bankruptcy Court, holding that the failure of the plan to mention the sale was irrelevant in light of the Bankruptcy Court's finding that "the plan's consummation depended almost entirely upon the sale of the building." *Id.* Debtor argues that the Second Circuit's decision in *Jacoby–Bender* controls the outcome of this case. Because the Second Circuit based its decision on the fact that

the transfer was essential to the plan's consummation, debtor argues, section 1146(c) applies to any transfer that, at any time following the transfer, is determined to be essential to a plan's consummation.

However, as the bankruptcy judge correctly acknowledged below, "*Jacoby–Bender* doesn't take [debtor] across the goal line in terms of all of the points that are being made. . . ." The Second Circuit did not address any timing issue in *Jacoby–Bender*. *Jacoby–Bender* involved a post-confirmation transfer, not a transfer occurring before the drafting of any plan. In fact, the Bankruptcy Court initially denied the debtor's motion to exempt the transfer without prejudice because a plan had not yet been confirmed at the time. *In re Jacoby–Bender, Inc.*, 34 B.R. 60, 62 (Bankr.E.D.N.Y.1983). The debtor renewed its motion following confirmation, at which point the Bankruptcy Court granted the motion. *In re Jacoby–Bender, Inc.*, 40 B.R. 10 (Bankr.E.D.N.Y.1984).

Debtor also relies on *In re 995 Fifth Avenue Assoc.*, 963 F.2d 503 (2d Cir.1992). In that case, the debtor continued to own and operate its principal asset, a hotel, after filing a petition under Chapter 11. Prior to confirmation of the plan of reorganization, the debtor received authorization from the Bankruptcy Court to sell its interest in the hotel. It is unclear whether a plan had yet been drafted at the time of the sale. The Bankruptcy Court determined that the sale was made under a plan of reorganization, and exempted the sale from transfer taxes under section 1146(c). Following the sale, the state of New York imposed a "gains tax" on the sale. The debtor argued before the Bankruptcy Court that 1) the gains tax was a "transfer" tax subject to section 1146(c), and 2) New York was not immune from suit as a sovereign because it had waived sovereign immunity. The Bankruptcy Court agreed

with the debtor on both points, *In re 995 Fifth Avenue Assoc.*, 116 B.R. 384 (Bankr. S.D.N.Y.1990), and the district court affirmed. *In re 995 Fifth Avenue Assoc.*, 127 B.R. 533 (S.D.N.Y.1991). The Second Circuit reversed in part, holding that the gains tax was not a transfer tax to which section 1146(c) applied. 963 F.2d at 513.

Thus, the only specific issues before the Second Circuit on appeal were "whether the Eleventh Amendment bars a debtor's suit to recover taxes paid to the State of New York, and whether 11 U.S.C. § 1146(c) (1988) exempts the debtor from payment of the New York gains tax on the transfer of property. . . ." *Id.* at 505. Debtor argues that in order to reach these issues, the Second Circuit must have decided implicitly that a transfer occurring before the confirmation of a plan was a transfer "under a plan confirmed" within the meaning of section 1146(c). However, the Second Circuit did not address the issue of whether section 1146(c) applies to a transfer occurring before the drafting of a plan. The parties never litigated that issue. Nor was it necessary for the parties to address the issue, because the Second Circuit ruled on the narrowest, clearest ground possible—that the gains tax was not a "transfer" tax within the meaning of section 1146(c).

Finally, two courts in the Eastern District of New York have held, following *Jacoby–Bender*, that section 1146(c) exempts from taxation a transfer that takes place pursuant to a plan that has not yet been confirmed. *In re Permar Provisions, Inc.*, 79 B.R. 530, 533–34 (Bankr. E.D.N.Y.1987); *In re Smoss Enter. Corp.*, 54 B.R. 950, 951–52 (E.D.N.Y.1987). I need not decide here whether *Permar* and *Smoss* correctly interpreted the Second Circuit's holding in *Jacoby–Bender*. Neither case stands for the proposition that a transfer is "under a plan confirmed" even

if a plan is drafted long after the transfer takes place.

Because I hold that section 1146(c) does not exempt transfers that take place before a plan of reorganization has been drafted, I do not reach the question of whether section 1146(c) applies to liquidating reorganizations.

## CONCLUSION

For the foregoing reasons, the order of the Bankruptcy Court is reversed. The case is remanded to the Bankruptcy Court for proceedings in accordance with this opinion.

SO ORDERED.