NYGAARD, Circuit Judge,
Dissenting.
Although this all may at first appear to be a “splitting of grammatical hairs,” I believe that the majority’s misinterpretation of 11 U.S.C. § 1146(c) “under a plan confirmed,” of sufficient significance to warrant separately expressing my views. Hence, I dissent. I do not think this phrase places a temporal restriction on the qualifying transactions. Instead, I read the phrase to be a description of eligible transfers-those under a plan confirmed-whether the transfer occurred before or after confirmation. As the Bankruptcy Court and District Court did in this case, I look to the structure and purpose of the bankruptcy code, and conclude that the transfers here should be excluded from taxation under § 1146(c).
I. § 1146(c) is Ambiguous
“We begin every statutory interpretation by looking to the plain language of the statute. When the language is clear, no further inquiry is necessary unless applying the plain language leads to an absurd result.” In Re: Resorts Int’l, Inc., 181 F.3d 505, 515 (3d Cir.1999) (citations omitted). However, even where the statutory language initially appears plain, application of the statute may reveal its ambiguity. See e.g., United States v. Doe, 980 F.2d 876, 877 (3d Cir.1992). This is such a case. Although the statute might be read to apply only to those transactions that take place following confirmation, this case illustrates the ambiguity of § 1146(c). At oral argument the parties averred that there was a proposed plan at the time the Bankruptcy Court approved these transactions. The Court subsequently confirmed the plan. Therefore, the transactions, though pre-confirmation, took place “under a plan confirmed.”
Reduced to its most basic elements, § 1146(c) states that, “the making or delivery of an instrument of transfer ... may not be taxed under any law imposing a stamp tax or similar tax.” But not every “instrument of transfer” is excluded from taxation. Section 1146(c) only excludes those “under a plan confirmed under section 1129.” Although the statute uses the past tense of “confirm,” the statute need not be read to place a temporal restriction on when the confirmation of the plan must take place, just that the plan must at some point be confirmed for the transfer to be exempt. To be unambiguous, the statute would need to contain an auxiliary verb stating the temporal restriction. For example, “under a plan that was confirmed under § 1129,” or “under a plan that will be confirmed under § 1129.” Without such a clarification the statute can just as plausibly be read as a description of eligible transfers, those “under a plan confirmed” regardless of when the plan is confirmed.
II. Statutory Interpretation
A. “Under a plan confirmed”
Lacking an auxiliary verb to place a temporal restriction on the exemption, the *258 parties struggle to define the word “under” in the statute. I start with what “under” in “under a plan” in § 1146(c) does not mean. The Appellants define “under” to create a temporal restriction. They argue “under” means “authorized by.” Here, the Bankruptcy Court approved the transactions under § 363. Therefore, since the transactions here were not “authorized by” the confirmed plan, they are not “under a plan confirmed.” The majority agrees that, among the many definitions of “under,” “authorized” is the meaning of “under” in § 1146(c). See Majority, sufra at III.B.
While “authorized by” is undoubtably one of the meanings of “under,” it is not unambiguously the meaning of “under” throughout § 1146(c). When Congress clearly meant “authorized” in the code, it used “authorized.” In at least nineteen sections of the code, Congress used “authorized,” and in several sections it even used “authorized under.” See e.g., 11 U.S.C. § 101(1) (“ ‘accountant’ means accountant authorized under applicable law”); 11 U.S.C. § 362(b)(16) (“participate in programs authorized under such Act”); 11 U.S.C. § 363(c)(2) (“if the business of the debtor is authorized to be operated under [various] sectionfs]”); 11 U.S.C. § 541(b) (“participate in programs authorized under the Higher Education Act”). This illustrates that “under” cannot be read in isolation. For example, “under” in “under a plan” may have a different meaning than “under” in “authorized under.”
More important, the majority’s reading of “under a plan” cannot be consistently applied throughout the bankruptcy code, particularly in reference to confirmation. The code accepts that some transactions may take place prior to confirmation and still be “under a plan.” Section 1129 sets out the requirements for confirmation, including: “(a) The court shall confirm a plan only if ... (4) Any payment made or to be made by the proponent, by the debt- or, or by a person issuing securities or acquiring property under the flan ... In connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.” § 1129(a)(4) (emphasis added). If “under the plan” means “authorized by” an already confirmed plan, then there could never be a payment made under a plan prior to confirmation. Such a reading would read out the past tense “made” in the above phrase. Instead, a more consistent reading of the code suggests that a purchase or sale “under the plan” does not require prior confirmation of the plan. As the majority notes, “in accordance with” is an acceptable definition of “under” and “a sale of real estate could be said to be ‘in accordance with’ with a plan ... that is confirmed [after the sale occurs].” Majority, sufra at III.B.
The majority looks to the repeated use of “under” § 1146(c) and concludes that “authorized by” makes the most sense in each instance. Typically words should have the same meaning as they are used throughout the code. See Sorenson v. Sec. of the Treasury, 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986). However, “under” is used in nearly two hundred different sections of the bankruptcy code. When “under” can be a preposition, adverb, adjective, noun, or verb, see Webster’s New International Dictionary of the English Language, Unabridged, (2d ed.1934), and it is used so frequently, this may be a case where this canon of statutory interpretation is of little value. See e.g., Kapral v. United States, 166 F.3d 565, 575 n. 7 (3d Cir.1999) (“Of course, canons of construction are not absolute and must yield when other indicia of congressional intent suggest a different result.”). Again, the key is that “under” cannot be read in *259 isolation, it must be read as part of the phrase “under a plan.”[1]
Only by reading “under” as “authorized by” does the statute place a temporal restriction on the transfers. However, when Congress wanted to apply a temporal restriction in the code, it knew how to do so, and did do expressly. See, e.g., § 1104(a) (“At any time after the commencement of the case but before confirmation of a plan ... ”); § 1105 (“At any time before confirmation of a plan ... ”); § 1121(b) (“... only the debtor may file a plan until after 120 days after the date of the order for relief’). Nonetheless, if the statute is unambiguous, it unambiguously does not place a temporal restriction on qualifying transfers. A definition of “under” that does not unduly limit the qualifying transfers is supported by the statutory intent, consistent reading of the code, and bankruptcy reality.
B. Reading tax exemptions narrowly vs. the remedial purpose of the bankruptcy code
The Appellants encourage us to apply the canon of interpretation to read tax exemptions narrowly. See e.g., BA Props. v. Gov’t of the United States V.I., 299 F.3d 207, 215 (3d Cir.2002). But we are not to abrogate the purpose of the exemption through too narrow an application. See id. (“A reflexive adherence to this canon without careful examination of the exemption in question may result in an abdication of the judiciary’s responsibility to interpret statutes in ways that are faithful to legislative intent.”). “[A]s a general rule grants of tax exemptions are given a strict interpretation against the assertions of the taxpayer and in favor of the taxing power but it is equally true that such interpretation may not be so literal and narrow as to defeat the exemption’s purpose. Moreover, ... a remedial statute such as the bankruptcy law should be liberally construed.” In re CCA Partnership, 70 B.R. 696, 698 (Bankr.D.Del.1987) (citing 3 Sutherland, Statutory Construction, §§ 60.01, 60.02, 66.09 (4th ed.1974)). Section § 1146(c), which applies only to Chapter 11 cases, was clearly intended to provide relief to debtors when they were compelled to sell assets under the plan. Our reading of the statute should comport with this intent.[2]
*260 In its opinion, the Bankruptcy Court described at length the reality of plan proposal and confirmation. The Bankruptcy Court lists four basic scenarios leading to plan confirmation. The debtor may (A) transfer all of its properties via a going concern sale authorized by a confirmed plan-a liquidating plan. In the alternative, the debtor may (B) transfer property prior to confirmation of the plan. “This typically occurs because the debtor has no reasonable prospects for reorganization, is in a severe negative cash flow situation and cannot await the plan confirmation process if the estate is to realize going concern value in the disposition of the business.” In re Hechinger, 254 B.R. 306, 320 (Bankr.D.Del.2000). This would still result in a liquidating plan. Instead of a liquidating plan, the debtor may restructure. Here, the debtor may (C) transfer some of its business/property via a restructuring or downsizing, as authorized by a confirmed plan. Again, in the alternative, the debtor may (D) transfer some property “done as a part of a formulated business plan to emerge from Chapter 11 with the transfer taking place prior to the filing of, or confirmation of, a plan. The pre-plan disposition may be prompted by the need to obtain going concern value for underperforming parts of the business and/or the need to position the debtor in its new business mode in order to formulate and negotiate a plan of reorganization.” Id.
The Bankruptcy Court noted that many Chapter 11 cases run for more than a year, and may require dispositions of property throughout the negotiation and filing of the plan. “[A] very distinct minority of cases fall into scenarios” (A) and (C), where transfers occur post confirmation. Id. at 320. Under the majority’s reading of § 1146(c), very few transfers will qualify for the exemption. I agree with the statement of the Bankruptcy Court: “I find it difficult to believe that Congress intended such a limited application of the exemption, particularly given the absence of a rational basis for preferring some plan scenarios over others.” Id. “Given the reality of business and bankruptcy practice, adopting a rule that requires all bankruptcy transfers to occur post-confirmation would seem to frustrate section 1146(c)’s stated purpose of facilitating reorganization in a large number of cases.” In re: GST Telecom, Inc, 2002 WL 442233, at *2, 2002 U.S. Dist. LEXIS 4662, *6 (D.Del.2002).
C. Essential to or an important component of the plan process
The majority frames the Trust’s reading of “made under a plan confirmed” as “necessary for the confirmation of a plan that is eventually confirmed,” then proceeds to undercut the Trust’s argument by again focusing on the meaning of “under” in isolation. Majority supra at III.D. To begin, there can be no question that § 1146(c) only applies if there is eventually a confirmed plan, we can agree that the plain language of the statute requires this much. The issue therefore becomes whether the District Court and Bankruptcy Court’s reading of the statute to apply only where the transfer is “essential to or an important component of the plan process” is improper. Whatever the meaning *261 of “under” in § 1146(c), there clearly must be a nexus between the plan confirmed and the transfer for the exemption to apply-
The Appellants here attempt to undercut the Bankruptcy and District Court’s reliance on In re Jacoby-Bender, 758 F.2d 840 (2d Cir.1985). The facts of JacobyBender are distinguishable, in that the sales there came after confirmation, but nothing in Jacoby-Bender indicates that its holding was predicated on the timing of the transactions. Lower courts purporting to follow Jacoby-Bender have consistently applied its reasoning to preconfirmation transfers. See e.g., In re Baldwin League of Indep. Schs., 110 B.R. 125, 127 (S.D.N.Y.1990); In re Smoss Enters. Corp., 54 B.R. 950, 951 (E.D.N.Y.1985); cf. In re 995 Fifth Ave. Assoc., L.P., 127 B.R. 533, 540 (S.D.N.Y.1991) (describing Jacoby-Bender as addressing the meaning of “under a plan”). In Jacoby-Bender, the debtor sought and received approval for the sale under § 363(b), just as the debtor in this case did. 758 F.2d at 841. Even though the sale was authorized by § 363(b), the Court of Appeals for the Second Circuit still found that the transaction was “under” the plan confirmed because it was necessary for the consummation of the plan. Id. The District Court here found that “[t]he transfers at issue here are clearly necessary to the plan because the proceeds of those transfers are to be used for funding Hechinger’s plan.” 276 B.R. 43, 48 (D.Del.2002). If “under” is not read to impose a temporal restriction on the qualifying transfers, there is no inconsistency with these decisions. I would follow the logic of Jacoby-Bender and affirm the District Court’s decision. These transfers were necessary to the plan, which was later confirmed, and therefore qualify for the exemption as being “under a plan confirmed.” Congress seeks to encourage plan confirmation through § 1146(c). If the exemption is limited to only those transactions occurring post confirmation, it is for Congress to make that determination.
III. Eleventh Amendment
Were my colleagues to agree with my analysis, we would need to reach the Eleventh Amendment issue. Although I agree with the analysis of the Bankruptcy Court and District Court and would affirm their decision, I limit my analysis in this dissent to issues reached in the majority’s opinion.

. If "under” must be read in isolation to have the same meaning throughout § 1146(c), "in accordance with” could be used in each instance in § 1146(c). As discussed above, the first instance of "under” in "under a plan” can logically be read as "in accordance with a plan.” Reading the third instance of "under” as "taxed in accordance with any law imposing a stamp tax or similar tax,” is no less correct than "taxed pursuant to the authority of any such law.” Finally, "Under” in "confirmed under section 1129” makes the most sense when read as "confirmed in accordance with section 1129.” Section 1129 sets out the requirements that must be met for a plan to be confirmed. 11 U.S.C. § 1129(a). Section 1129 is not a grant of authority, it is a statement of requirements that must be met for confirmation. As noted above, it even uses the phrase "under a plan” when referring to both pre- and post-confirmation payments.

. Little has been written concerning the legislative history of § 1146(c). The best description comes from In re Permar, 79 B.R. 530, 533 (Bankr.E.D.N.Y.1987):
The legislative history to section 1146(c) is scant. The Senate and House Reports to the Bankruptcy Code state "subsection [c] is derived from section 267 of the Bankruptcy Act.” S.R. No. 989, 95th Cong., 2d Sess. 132 (1978); H.R. No. 595, 95th Cong., 1st Sess. 421 (1977). Section 267 had similar "under the plan” language as section 1146(c). The direct predecessor of section 267, section 77B(f), however, had a different nexus: “to make effective any plan.” Several parallel tax statutes to section 267 had the same "to make effective any plan” language. See 6A Collier on Bankruptcy Para. 15.08 at 837-40 (14th ed.1977). Collier concluded "the provisions of [section] 267 and those of the Internal Revenue Code *260 with its amendments make it clear that the exemption conferred relates only to transactions otherwise taxable which serve to execute or malte effective a plan confirmed under Chapter X.” 6A Collier on Bankruptcy Para. 15.08 at 840 (14th ed.1977).
Id. As the Second Circuit in Jacoby-Bender noted, “Congress's apparent purpose in enacting section 1146 was to facilitate reorganizations through giving tax relief.” In re Jacoby-Bender, 758 F.2d 840, 841 (2d Cir.1985). We should read 1146(c) to facilitate reorganization, not impede reorganization.