### In re WEBSTER CLASSIC AUCTIONS, INC., Debtor.

### No. 03–17617–8B1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 7, 2004.

Buddy D. Ford, Lead Attorney, Tampa, FL, for Debtor.

Denise E. Barnett, Tampa, FL, for Trustee.

## ORDER ON MOTION FOR ORDER REQUIRING REIMBURSEMENT OF DOCUMENTARY STAMPS PURSUANT TO 11 U.S.C. § 1146(c) OF THE BANKRUPTCY CODE

THOMAS E. BAYNES, JR.,
Bankruptcy Judge.

THIS CAUSE came on for hearing upon Motion for Order Requiring Reimbursement of Documentary Stamps Pursuant to 11 U.S.C. § 1146(c)[1] of the Bankruptcy Code ("Documentary Stamp Motion") filed by Debtor in the above captioned case. The Court having considered the Motion, together with the record, finds as follows:

### FACTS

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on August 25, 2003. On January 6, 2004, following notice and a hearing, this Court entered its Order Granting Motion to Approve Sale of Property Free and Clear of Liens ("January Sale Order"), authorizing Debtor to sell real property located at 1928 Gulf to Bay Boulevard, Clearwater, Florida for $1,300,000.00. There is no mention of

§ 1146(c) in either the Motion to Approve Sale of Property Free and Clear of Liens ("Sale Motion") or January Sale Order granting, nor are there any findings regarding the necessity of the sale for reorganization. There is one assertion in the Motion stating the sale is in the best interest of the bankruptcy estate and its creditors, but no finding to that effect in the January Sale Order.

At the time the Court entertained and granted the Debtor's Sale Motion, there was no Plan of Reorganization or Disclosure Statement filed. In fact, the Plan of Reorganization and Disclosure Statement were not filed until March 18, 2004, following this Court's entry of an Order to Show Cause scheduling a hearing on Debtor's failure to file the documents prior to the expiration of exclusivity on December 23, 2003. There is no mention in either the Plan or the Disclosure Statement of seeking repayment of the documentary stamps paid at the earlier real estate closing, though the Disclosure Statement accurately reflects the documentary stamps were paid at closing. The Debtor filed the Documentary Stamp Motion on June 22, 2004. The Court confirmed Debtor's Plan on October 4, 2004. In the Confirmation Order, the Court retained jurisdiction to rule on the Documentary Stamp Motion.

### LEGAL ANALYSIS

#### Sovereign Immunity

In its response to the Debtor's Motion, the Florida Department of Revenue raises a defense of sovereign immunity under the Eleventh Amendment. Pursuant to Eleventh Circuit case law, "... an assertion of Eleventh Amendment immuni-

---

**1.** Throughout this Order, all references to code sections refer to 11 U.S.C., unless otherwise indicated.

ty must be resolved before a court may address the merits of the underlying claim(s)." *Seaborn v. State of Fla., Dept. of Corrections,* 143 F.3d 1405, 1407 and note 2 (11th Cir.1998(Fla.)) (holding the United States Supreme Court ruling in *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 93–102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) eliminated the exercise of "hypothetical jurisdiction," a practice used in the Eleventh Circuit prior to *Steel* to permit courts to bypass the sovereign immunity issue and dismiss the case on its merits). In this case, the Florida Department of Revenue filed a proof of claim. Pursuant to 11 U.S.C. § 106(b), the filing of the proof of claim waives a defense of sovereign immunity. Further, 11 U.S.C. § 106(a) expressly abrogates an assertion of sovereign immunity, and permits a monetary award against a governmental unit, with respect to 11 U.S.C. § 1146(c). This Court finds sovereign immunity is either abrogated or waived, and the Court has subject matter jurisdiction to resolve the issue at hand.

### *Applicability of 11 U.S.C. § 1146(c)*

■ At issue in this case is the applicability to the January real property sale of 11 U.S.C. § 1146(c), which provides: "The issuance, transfer, or exchange of a security, or the making or delivery or an instrument of transfer *under a plan confirmed* under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." (emphasis added). Interpretation of the meaning of "under a plan confirmed" is at the heart of determining when and how to apply this safe harbor provision, and is a question of first impression in the Eleventh Circuit.

Both the Third and Fourth Circuit Courts of Appeal adopt a restrictive interpretation of transfers "under a plan confirmed," holding § 1146(c) applies only to transfers occurring after the date the plan is confirmed. *See In re Hechinger Investment Co.,* 335 F.3d 243, 252–4 (3rd Cir. 2003); *NVR Homes, Inc. v. Commonwealth of Pennsylvania (In re NVR, LP.),* 189 F.3d 442, 454–58 (4th Cir.1999), *cert. denied* 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 815 (2000). Under this bright-line interpretation, even transfers contemplated in a plan and disclosure statement as being of a type subject to § 1146(c)'s safe harbor provision will not qualify unless they occur on a date after the order confirming a plan is entered. Though appealing in its alleged simplicity, this temporal interpretation largely ignores the practical reality of Chapter 11 reorganization cases.

The seeds of a better reasoned approach are found in the Second Circuit case of *City of New York v. Jacoby–Bender, Inc. (In re Jacoby–Bender, Inc.),* 758 F.2d 840, 841–2 (2nd Cir.1985) (holding the failure of a confirmed plan to include details regarding an actual transfer and authority for same did not preclude application of § 1146(c) to postconfirmation sale of real property where the bankruptcy court found the plan's consummation depended almost entirely on the sale). As ably argued in the *Hechinger* dissent, the better interpretation of "under a plan confirmed" looks not to the timing of the transfers, but to the necessity of the transfers to a proposed plan of reorganization. *Hechinger,* 335 F.3d at 261 (Nygaard, J., dissenting). This Court adopts and extends the reasoning first articulated in the *Jacoby–Bender* case, which explicitly recognized ". . . Congress's apparent purpose in enaction section 1146(c) was to facilitate reorganizations through giving tax relief, a purpose served equally well when the reorganization plan leaves details to be settled in the future." *Jacoby–Bender,* 758 F.2d at 841.

■ Rejecting the *Hechinger* majority's attempts to distinguish the *Jacoby–Bender*

reasoning because its facts concerned post-confirmation rather than preconfirmation transfers, the dissent notes the reasoning has been applied by other courts to preconfirmation transfers. *Hechinger*, 335 F.3d at 261. *But see, NVR, Inc.*, 189 F.3d at 456–7(arguing lower courts misinterpret *Jacoby–Bender* to apply to transfer necessary for "confirmation" of a plan rather than "consummation" of a plan). A striking similarity between the Third and Fourth Circuit opinions is both opinions reversed bankruptcy court findings that § 1146(c) applied to the transfers at issue in their cases, perhaps implying the sometimes academic exercise of statutory interpretation may be overshadowing the practical realities of bankruptcy reorganization. This Court finds § 1146(c) does not contain a per se temporal requirement, but rather requires appropriate notice and opportunity for parties to understand there is a debtor in bankruptcy and the transfer in question involves the debtor's property and a taxable event. As Chapter 11 reorganization is a sophisticated process, this Court finds inserting an artificial preconfirmation v. postconfirmation line of demarcation into the § 1146(c) analysis fails to recognize the complexities the reorganizing debtor often faces. For these reasons, this Court will not follow the restrictive interpretation adopted by the Third and Fourth Circuit Courts of Appeal.

■ This Court adopts the following criteria for determining the applicability of § 1146(c). There must be a plan of reorganization specifically contemplating a sale of property,[2] and the plan must ultimately be confirmed in order for a debtor to take advantage of § 1146(c)'s safe harbor. Any sale of property contemplated in the plan which is sought to be sold prior to confirmation must set out the requirements of § 1146(c), and must be served on all relevant taxing authorities. The notice to taxing authorities will be included in the required § 363(b) sale motion.[3] Assuming all of these criteria are met, a Court must still determine whether the sale meets all the other requirements found in § 363 and § 1146(c).

These criteria benefit the creditors, the reorganizing Debtor and the bankruptcy court. The criteria accommodate the pragmatic realities of Chapter 11 reorganizations by recognizing the inestimable benefit to a Chapter 11 estate to sell a piece of property at the most opportune time—whether pre-or postconfirmation—as opposed to requiring all concerned to wait for a postconfirmation sale in order to receive the tax relief Congress obviously intended. These criteria recognize the ultimate benefit of getting the highest dollar amount for estate property, and the concomitant benefit of applying the § 1146(c) safe harbor, which will inure primarily to the Chapter 11 creditors. These criteria also eliminate the possibility of the Chapter 11 Debtor paying taxes and then having to seek problematic refunds from taxing authorities. By ensuring sufficient notice to the taxing authorities of the contemplated sale in a proposed Chapter 11 plan of reorganization (whether confirmed or not) and the sale motion, these criteria afford the taxing authority and other interested parties the ability to raise all appropriate objections under § 363 and § 1146(c).

---

**2.** The Court is not holding the plan must set out a specific sale, e.g. Debtor shall sell Blackacre to Buyer X on a date certain, but rather the plan shall specifically contemplate the sale of estate property as part of the reorganization.

**3.** The Debtor filed a § 363(b) sale motion in this case, as did the debtor in *Jacoby–Bender*. *See Jacoby–Bender*, 758 F.2d at 841. The Court is not stating the § 363(b) sale motion is the only vehicle to provide appropriate notice to the taxing authorities of a sale where § 1146(c) applies, only noting it is a convenient and logical place to provide such notice.

## CONCLUSION

The criteria for applying § 1146(c) under any analysis are not met here as to this Debtor. Simply put, there can be no sale "under a plan confirmed" in this case because the Debtor had no plan of reorganization on the date of the transfer. *See New York Dept. of Fin. v. 310 Associates, L.P. (In re 310 Associates, L.P.)*, 282 B.R. 295, 299–301 (S.D.N.Y.2002) (finding no support for applying 11 U.S.C. § 1146(c) where a plan is drafted long after the transfer in question). As noted above, the January Sale Order precedes by more than three months the filing of a Plan of Reorganization and Disclosure Statement. The Motion shall be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Order Requiring Reimbursement of Documentary Stamps Pursuant to 11 U.S.C. § 1146(c) of the Bankruptcy Code filed by Debtor be, and the same is hereby, denied.