[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-13759

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 18, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-60553-CV-CMA
BKCY No. 03-27976- BKC-RB

In Re: PICCADILLY CAFETERIAS, INC.

                                                      Debtor.

_____

STATE OF FLORIDA DEPARTMENT OF REVENUE,

                                                      Plaintiff-Appellant,

     versus

PICCADILLY CAFETERIAS, INC.,

                                                      Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 18, 2007)**

Before BARKETT and KRAVITCH Circuit Judges, and TRAGER,[*] District Judge.

PER CURIAM:

The Florida Department of Revenue ("DOR") appeals the district court's affirmance of the bankruptcy court's decision granting Piccadilly Cafeterias ("Piccadilly") a stamp-tax exemption pursuant to 11 U.S.C. § 1146(c) on the sale of Piccadilly's assets. The issue presented is whether the §1146(c) stamp-tax exemption may apply to asset transfers made before a plan of reorganization is confirmed under 11 U.S.C. § 1129.

## I. Background

On October 28, 2003, Piccadilly executed an asset purchase agreement with Piccadilly Acquisition Corporation ("PAC") wherein PAC agreed to purchase substantially all of Piccadilly's assets, consisting mainly property, for $54 million. On October 29, 2003, Piccadilly filed for bankruptcy under Chapter 11 of the Bankruptcy Code. Piccadilly also filed a motion requesting authorization to sell substantially all of its assets outside of the ordinary course of business pursuant to 11 U.S.C. § 363(b)(1). As part of its § 363 motion, Piccadilly also requested an exemption from stamp taxes on the asset sale pursuant to 11 U.S.C. § 1146(c). The

---

[*] Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

DOR objected to both requests.

Although Piccadilly had already executed an asset purchase agreement with PAC, it nonetheless requested that the bankruptcy court conduct an auction through which the highest bidder would be entitled to purchase its assets. In an order dated December 4, 2003, the bankruptcy court approved the bidding process, scheduled an auction of Piccadilly's assets, established bid and sale procedures for the auction, and scheduled a hearing to approve the ultimate sale. The winning bid of $80 million was from Piccadilly Investments, LLC.

On January 26, 2004, Piccadilly, along with a committee of senior secured note holders and a committee of unsecured creditors entered into a global settlement agreement ("Global Settlement"). The Global Settlement resolved, inter alia, the priority of distribution among Piccadilly's creditors and, according to Piccadilly, was in many ways "analogous to confirmation of a plan."

On February 13, 2004, the bankruptcy court conducted a sale hearing, approved the sale of Piccadilly's assets to Piccadilly Investments, and held that the sale was exempt from stamp taxes pursuant to § 1146(c). The court also approved the Global Settlement. On March 15, 2004, the bankruptcy court entered an amended sale order. The DOR then filed a motion to reconsider, vacate, and/or amend the sale order, which the court denied. The asset sale closed on March 16,

2004.

On March 26, 2004, Piccadilly filed its initial Chapter 11 Plan of Liquidation and later filed an "Amended Plan." The DOR filed an objection to confirmation of the Amended Plan and commenced the instant adversary action by filing a complaint against Piccadilly seeking a declaration that stamp taxes in the amount of $39,200 were not exempt under § 1146(c). On October 21, 2004, over the DOR's objection, the bankruptcy court confirmed the Amended Plan (the "Confirmation Order"). The DOR filed a motion to reconsider the Confirmation Order, which the bankruptcy court denied. The DOR then filed an amended complaint in the adversary proceeding, and both Piccadilly and the DOR filed motions for summary judgment.

Following a hearing, the bankruptcy court granted summary judgment in favor of Piccadilly, holding that the asset sale was exempt from stamp taxes pursuant to § 1146(c). The bankruptcy court reasoned that the sale of substantially all of Piccadilly's assets was a transfer "under" its confirmed plan of reorganization because the sale was necessary to consummate the plan. On appeal, the district court affirmed the bankruptcy court's grant of summary judgment to Piccadilly. In its order, however, the district court emphasized that the parties had not addressed the issue of whether the § 1146(c) tax exemption applied to the sale

of *Piccadilly's assets*, rather, the parties focused their arguments on whether the exemption may *ever* apply to asset transfers completed *before* a plan of reorganization has been confirmed by the bankruptcy court (that is, pre-confirmation transfers). Thus, according to the district court, the issue of whether the § 1146(c) exemption applied to the sale of Piccadilly's assets was not properly before it. Nevertheless, the district court expressly affirmed the bankruptcy court's implicit conclusion that § 1146(c) may apply "where a transfer is made pre-confirmation." The DOR appeals.

## II. Discussion

On appeal, the DOR argues that the district court erred in holding that the § 1146(c) stamp-tax exemption may apply to pre-confirmation asset sales. "[T]his court reviews a district court's order granting summary judgment de novo." In re Club Assocs., 951 F.2d 1223, 1229 (11th Cir. 1992). We likewise review de novo questions of law involving the interpretation and application of the Bankruptcy Code, whether from the bankruptcy court or the district court. In re Int'l Admin. Servs., Inc., 408 F.3d 689, 698 (11th Cir. 2005).

Section 1146(c)[1] of the Bankruptcy Code exempts from stamp or similar

---

[1] In April of 2005, § 1146 was amended by, inter alia, re-designating what was formerly subsection (c) as subsection (a) (that is, what was § 1146(c) prior to 2005 is now § 1146(a)). Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 719(b)(3)(B), 119 Stat. 23 (2005) (amending 11 U.S.C. § 1146 (2005)). For the sake of clarity,

taxes any asset transfer "under a plan confirmed under" § 1129. 11 U.S.C.

§ 1146(c). The dispute in this case turns upon whether pre-confirmation transfers

may constitute transfers "under a plan confirmed."

This court has yet to squarely address whether the § 1146(c) tax exemption

may apply to pre-confirmation transfers. The Third and Fourth Circuits, however,

have addressed this issue, and both have held that the § 1146(c) tax exemption may

*not* apply to such transfers.

In In re NVR, LP, the Fourth Circuit held that the plain language of

§ 1146(c) foreclosed application of the tax exemption to pre-confirmation

transfers. 189 F.3d 442, 456-58 (4th Cir. 1999). After determining that standard

dictionaries define "under" as "[w]ith the authorization of," "inferior," or

"subordinate," the Fourth Circuit stated that it could not "say that a transfer made

prior to the date of plan confirmation could be subordinate to, or authorized by,

something that did not exist at the date of transfer—a plan confirmed by the court."

Id. at 457. The NVR court also relied on the interpretive canon that courts must

narrowly construe exemptions from state taxation in reaching its holding. Id.

however, we refer to § 1146(c) as it existed at the time the majority of the events relevant to this case occurred (that is, before April of 2005).

The version of § 1146(c) in effect at the time of the proceedings in the bankruptcy court reads as follows: "The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(c) (2000).

In In re Hechinger Investment Co. of Delaware, Inc., the Third Circuit concluded that "the most natural reading of the phrase 'under a plan confirmed' in 11 U.S.C. § 1146(c) is 'authorized' by such a plan" and held that the § 1146(c) exemption does not apply to pre-confirmation transfers. 335 F.3d 243, 252-54 (3d Cir. 2003). In so holding, the Hechinger majority determined that the "authorized by" reading "fits best with the remaining language of Section 1146(c)" and also "gives the phrase 'under a plan confirmed' the same meaning as an identical phrase in another provision of the Bankruptcy Code, 11 U.S.C. § 365(g)." Id. at 253-54. The court also relied on two interpretive canons: "tax exemption provisions are to be strictly construed" and "federal laws that interfere with a state's taxation scheme must be narrowly construed in favor of the state." Id. at 254.

Although, as stated, this court has never addressed the precise issue of whether the § 1146(c) exemption applies to pre-confirmation transfers, in In re T.H. Orlando Ltd., it addressed a somewhat similar issue of interpretation regarding § 1146(c). 391 F.3d 1287, 1291 (11th Cir. 2004). In that case, as part of a confirmed plan, a third-party mortgage lender agreed to lend money to the debtor on the condition that the owner of the property adjacent to the debtor's property would refinance its mortgage through the same mortgage lender. Id. at 1289-90. The issue before this court was whether a transaction between two non-debtors (a

7

transaction that was specifically contemplated by the confirmed plan of reorganization) was exempt from stamp taxes under § 1146(c). Id. at 1290-91. The court concluded that "[a] transfer 'under a plan' refers to a transfer authorized by a confirmed Chapter 11 plan. In turn, a plan authorizes any transfer that is necessary to the consummation of the plan." Id. at 1291. Accordingly, this court held that "the phrase 'under a plan' refers to a transfer that is necessary to the consummation of a confirmed Chapter 11 plan."[2] Id. at 1292.

The Second Circuit also addressed an analogous issue in In re Jacoby-Bender, Inc., where the question presented was whether a property transfer that occurred post-confirmation was exempt under § 1146(c) even though the "plan did not mention any instrument of transfer and did not give the debtor the authority to make the specific sale." 758 F.2d 840, 841 (2d Cir. 1985). The Second Circuit observed that "Congress's apparent purpose in enacting section 1146(c) was to facilitate reorganizations through giving tax relief." Id. The court also noted that § 1146(c) was derived from § 267 of Chapter X of the old Bankruptcy Act, and that § 267 related to transactions "which serve to execute or make effective a plan

---

[2] Although this court in T.H. Orlando explicitly agreed with the "interpretation[s] of § 1146(c)" articulated in Hechinger and NVR, this court's conclusion that the phrase "under a plan" refers to a transfer that is "necessary to the consummation of a confirmed plan" does not square with the strict temporal interpretation articulated in Hechinger and NVR. See T.H. Orlando, 391 F.3d at 1291. Moreover, this court neither explicitly nor implicitly approved of the conclusion that § 1146(c) may not extend to pre-confirmation transfers. See id.

8

confirmed under Chapter X." Id. at 841-42. To that end, the court held that a specific sale or asset transfer takes place "under" a confirmed plan within the meaning of § 1146(c) where the transfer "is necessary to the consummation of a plan."[3] Id. at 842.

In our view, the better reasoned approach to § 1146(c) is found in Jacoby-Bender and T.H. Orlando, as the better reading of "under a plan confirmed" looks not to the timing of the transfers, but to the necessity of the transfers to the consummation of a confirmed plan of reorganization. See Hechinger, 335 F.3d at 261 (Nygaard, J., dissenting).

First, the plain language of § 1146(c) is ambiguous, as the statute can plausibly be read either as describing eligible transfers to include transfers "under a plan confirmed" regardless of *when* the plan is confirmed, *or*, as the DOR argues, imposing a temporal restriction on when the confirmation of the plan must occur. Second, when Congress wanted to place a temporal restriction in the Bankruptcy Code it did so expressly. See, e.g., 11 U.S.C. § 1104(a) ("At any time after the

---

[3] Notably, at least two bankruptcy courts have adopted the reasoning articulated in Jacoby-Bender and concluded that § 1146(c) does apply to pre-confirmation transfers that are "necessary to the consummation" of a confirmed plan. See In re Webster Classic Auctions, Inc., 318 B.R. 216, 218 (Bankr. M.D. Fla. 2004) (holding that § 1146(c) applies to transfers that are specifically contemplated by an existing plan of reorganization that is ultimately confirmed); In re Beulah Church of God In Christ Jesus, Inc., 316 B.R. 41, 47-51 (Bankr. S.D.N.Y. 2004) (holding that transfers integral to the confirmation of an existing plan are exempt under § 1146(c) as transfers necessary for the plan's consummation).

commencement of the case but before confirmation of a plan . . . .”); 11 U.S.C.

§ 1104(c) (“[T]hen at any time before the confirmation of a plan . . . .”); 11 U.S.C.

§ 1105 (“At any time before confirmation of a plan . . . .”); 11 U.S.C. § 1114(e)(2)

(“Any payment for retiree benefits required to be made before a plan confirmed

under [§ 1129] is effective . . . .”); 11 U.S.C. § 1127(b) (“[A]t any time after

confirmation of such plan . . . .”).  “Where Congress includes particular language

in one section of a statute but omits it in another section of the same Act, it is

generally presumed that Congress acts intentionally and purposely in the disparate

inclusion or exclusion.”  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1168

(11th Cir. 2003) (citation and internal punctuation omitted).  Next, although, as a

general rule, grants of tax exemptions are narrowly construed, it is equally true that

“we are not to abrogate the purpose of the exemption through too narrow an

application.”  Hechinger, 335 F.3d at 259 (Nygaard, J., dissenting).  This is

especially so in light of the principle that a remedial statute such as the Bankruptcy

Code should be liberally construed.  Matter of Crist, 632 F.2d 1226, 1232 (5th Cir.

1980)[4] (counseling “liberal construction of the Bankruptcy Act in light of the

purpose of the provision under consideration”); see also Bechtel Constr. Co. v.

_____

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981.

10

Sec'y of Labor, 50 F.3d 926, 932 (11th Cir. 1995) (stating that "it is appropriate to give broad construction to remedial statutes"). Finally, the strict temporal construction of § 1146(c) articulated by the Third and Fourth Circuits ignores the practical realities of Chapter 11 reorganization cases, as even transfers contemplated in a plan of reorganization will not qualify for the tax exemption unless they occur *after* the order confirming a plan is entered. But it is just as probable that a debtor may need to close a sale as a condition precedent to the parties' willingness to proceed with confirmation of a plan as it is for the parties to agree on the terms of a plan, obtain confirmation, and then determine what the sale will bring. See In re Beulah Church of God In Christ Jesus, Inc., 316 B.R. 41, 50 (Bankr. S.D.N.Y. 2004). For these reasons, we decline to follow the strict temporal interpretation adopted by the Third and Fourth Circuits. Instead, we hold that § 1146(c)'s tax exemption may apply to *those* pre-confirmation transfers that are necessary to the consummation of a confirmed plan of reorganization, which, at the very least, requires that there be some nexus between the pre-confirmation transfer and the confirmed plan.

We emphasize that the issue of whether the bankruptcy court properly applied the § 1146(c) tax exemption to the asset sale in this case has not been

briefed by the parties and is not properly before us.[5]  Hence, we do not decide this

issue.  See Hall v. Coram Healthcare Corp., 157 F.3d 1286, 1290 (11th Cir. 1998).

Rather, the parties' arguments focus on whether, as a general proposition, the

§ 1146(c) tax exemption *may* apply to pre-confirmation transfers.  As such, we

leave for another day an attempt to set forth a framework for determining the

circumstances under which § 1146(c)'s tax exemption may apply to pre-

confirmation transfers.

### III. Conclusion

For the foregoing reasons, we **AFFIRM**.

---

[5] The DOR's argument that summary judgment was improper could have been based on one of two grounds—that the § 1146(c) exemption may *never* apply to pre-confirmation transfers, *or*, even if § 1146(c) *may* apply to pre-confirmation transfers, it did not apply to the specific pre-confirmation sale in *this case*.  The DOR presents only the former argument before this court.

12