[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 30, 2004
THOMAS K. KAHN
CLERK

_____

No. 04-10012

_____

D. C. Docket No. 03-00763 CV-ORL-06DAB
BKCY No. 97-01680-6b1

In Re: T.H. ORLANDO LTD.,

Debtor.

_____

STATE OF FLORIDA,
Department of Revenue,

Plaintiff-Appellee,

versus

T.H. ORLANDO LTD.,
T.H. RESORTS ASSOCIATES LTD.,
KISSIMMEE LODGE LTD.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 30, 2004)**

Before BLACK, RONEY and ALARCÓN[*], Circuit Judges.

ALARCÓN, Circuit Judge:

Appellants T.H. Orlando, Ltd., T.H. Resorts Associatess, Ltd., and Kissimmee Lodge, Ltd., appeal from the district court's order reversing the bankruptcy court's grant of summary judgment against the Florida Department of Revenue ("FDOR"). The district court concluded as a matter of law that § 1146(c), which exempts from stamp or similar taxes the making or delivery of an instrument of transfer under a confirmed Chapter 11 plan, does not extend to third-party transactions involving non-estate property. We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(d) and 1229. We reverse because we conclude that the transfer at issue in this case was necessary to the consummation of a confirmed Chapter 11 plan.

I

Appellants T.H. Orlando, Ltd. and T.H. Resorts Associates, Ltd. (collectively, the "debtors") own three hotels in the Orlando, Florida area. In February of 1997, the debtors, facing foreclosure of the mortgage encumbering the three hotels, filed for Chapter 11 bankruptcy. Although the mortgage debt on the

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

three hotels exceeded $70 million, the mortgage lender, RECP Orlando, L.P., agreed to accept $23.5 million in satisfaction of the outstanding mortgage balance. RECP conditioned its offer on receipt of $23.5 million by August 31, 1997.

Berkshire Mortgage Finance Corporation was the only lender willing to advance the debtors $23.5 million before August 31, 1997. Berkshire, however, conditioned its offer to lend the debtors $23.5 million on the agreement of Kissimmee Lodge, Ltd., a non-debtor that owned a hotel adjacent to one of the debtor's hotels, to refinance its hotel through Berkshire as part of the same transaction. Kissimmee agreed to participate in this transaction solely as an accommodation to the debtors. Kissimmee's hotel was not subject to the RCAP mortgage, and it was under no obligation to refinance its hotel at the time.

Effective July 31, 1997, Berkshire issued four commitment letters, under which it agreed to make the following loans: (1) $4 million to T.H. Orlando secured by a mortgage on its hotel; (2) $9.9 million to T.H. Resorts secured by a mortgage on one of its two hotels; (3) $12.8 million to T.H. Resorts secured by a mortgage on the other of its hotels; and (4) $29.35 million to Kissimmee secured by a mortgage on its hotel. Pursuant to this agreement, the debtors filed a Chapter 11 joint plan of reorganization (the "Orlando plan") which provides, in pertinent part:

3

Berkshire's willingness to make the loan to [the debtors] is contingent upon Kissimmee Lodge's agreement to refinance its hotel through Berkshire; Berkshire will not provide any financing to [the debtors] unless Kissimmee Lodge refinances through Berkshire. The Kissimmee Lodge refinancing therefore is incident to an a condition precedent to the reorganization of [the debtors] and that refinancing therefore is exempt from Florida documentary stamp taxes, intangible and similar taxes pursuant to 11 U.S.C. § 1146(c).

The FDOR filed a timely objection to the confirmation of the plan. The FDOR argued that the plan failed to comply with 11 U.S.C. § 1129(a)(1)[1] because the § 1146(c) exemption the proposed plan conferred on the Kissimmee transaction was not available as a matter of law to non-debtor entities. At the August 18, 1997 confirmation hearing, the bankruptcy court sustained the FDOR's objection without prejudice and confirmed the plan. With respect to the Kissimmee transaction, the Confirmation Order provided:

> The Plan . . . is hereby confirmed, and all objections thereto are overruled, except that the objection raise by the [FDOR] is sustained without prejudice, and the Plan is hereby amended such that the $29,350,000 mortgage refinancing transaction between Kissimmee Lodge and Berkshire shall not, until further order of this Court be deemed exempt from Florida documentary stamp taxes under 11 U.S.C. § 1146(c).

Kissimmee paid $161,425 in Florida documentary stamp taxes and intangible taxes under protest.

---

[1]11 U.S.C. § 1129(a)(1) provides that a court "shall confirm a plan only if . . . [t]he plan complies with the applicable provisions of this title."

The debtors and Kissimmee then filed suit in the Circuit Court for Osceola County, Florida seeking declaratory relief and a refund of the $161,425 in stamp and intangible taxes that Kissimmee had paid. In response, the FDOR removed the case to federal bankruptcy court. The bankruptcy court found that Kissimmee's agreement to refinance was done pursuant to the Orlando plan, was essential to the confirmation of the plan, and was necessary to consummate and implement the plan. Accordingly, the bankruptcy court concluded that Kissimmee's refinancing of its mortgage was "under a plan" within the meaning of § 1146(c) and that Kissimmee was entitled to a judgment of $161,425 against the FDOR. The district court reversed, holding that § 1146(c) was inapplicable because the transaction involved two non-debtors.

## II

The district court's interpretation of 11 U.S.C. § 1146(c) is a question of law this court reviews *de novo*. *See In re Morgan*, 182 F.3d 775, 777 (11th Cir. 1999). Section 1146(c) provides:

> The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

11 U.S.C. § 1146(c). To qualify for an exemption under this provision, three conditions must be satisfied: (1) there must be a stamp tax or similar tax, (2) imposed upon the making or delivery of an instrument of transfer, (3) "under" a confirmed Chapter 11 plan. *See In re Amsterdam Ave. Dev. Ass'n*, 103 B.R. 454, 456 (Bankr. S.D.N.Y. 1989). There is no dispute that the first two conditions are met in this case. The controversy centers on whether the mortgage Berkshire secured on Kissimmee's hotel was a transfer "under" the Orlando plan where neither estate property nor the debtor was involved in the transaction.

We begin "with the language of the statute itself." *United States v. Ron-Pair Enters., Inc.*, 489 U.S. 235, 240 (1989). If the language of the statute is plain, our sole obligation is to enforce the statute "'according to its terms.'" *Id*. (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). By its terms, § 1146(c) exempts from stamp taxes or similar taxes any instrument of transfer "under" a confirmed Chapter 11 plan. The Third Circuit has held that "the phrase 'under a plan confirmed' in 11 U.S.C. § 1146(c) was most likely intended to mean 'authorized by a plan confirmed.'" *In re Hechninger Inv. Co. of Del*., 335 F.3d 335 F.3d 243, 252 (3rd Cir. 2003). Similarly, the Fourth Circuit concluded that the term "under" may be construed as "[w]ith the authorization of" a Chapter 11 plan. *See In re NVR LP*, 189 F.3d 442, 457 (4th Cir. 1999) (quoting *Webster's II New*

6

*Riverside University Dictionary* 1256 (1988)).  The Second Circuit has recognized

that a chapter 11 plan impliedly authorizes any transfer that its necessary to the

consummation of the plan.  *See City of New York v. Jacoby-Bender*, 758 F.2d 840,

842 (2d Cir. 1985) ("[W]here, as here, a transfer, and hence an instrument of

transfer, is *necessary to the consummation* of a plan, the plan seems implicitly to

have 'dealt with' the transfer instrument.") (emphasis added).  We agree with our

sister circuits' interpretation of § 1146(c).  A transfer "under a plan" refers to a

transfer authorized by a confirmed Chapter 11 plan.  In turn, a plan authorizes any

transfer that is necessary to the consummation of the plan.

Since the Orlando plan expressed authorized the Kissimmee transaction,

which the bankruptcy court found was necessary to consummation of the Orlando

plan, the mortgage Kissimmee extended to Berkshire is exempt from Florida's

stamp tax under the plain language of § 1146(c).  While the FDOR argues that no

reported decision extends a § 1146(c) exemption to a third-party transaction

involving non-estate property,[2] nothing in the plain language of § 1146(c) restricts

---

[2]Indeed, at least two bankruptcy courts apparently have concluded that § 1146(c) may not extend as a matter of law to non-debtor transactions.  *See In re Bel-Aire Invest., Inc.*, 142 B.R. 992, 996 (Bankr. M.D. Fla. 1992) ("[T]his court is satisfied that § 1146(c) should not be extended to a transaction entered into by a non-debtor corporation after it has received assets from a Debtor, when the Debtor is not a party to that transaction."); *Amsterdam*, 103 B.R. at 460 (concluding that Congress "did not intend that section 1146(c) exemptions for transfers under a Chapter 11 plan apply to non-debtor transactions").  As we discuss in more detail below, none of
(continued...)

its application to transactions involving the debtor or estate property. We therefore conclude that the phrase "under a plan" refers to a transfer that is necessary to the consummation of a confirmed Chapter 11 plan irrespective of whether the transfer involved the debtor or property of the estate.

The FDOR objects that construing § 1146(c) to encompass third-party transactions involving non-estate property would extend the bankruptcy court's jurisdiction beyond its statutory limits. In support of this argument, the FDOR cites this Court's decision in *United States v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir. 1986). In *Huckabee*, this Court held that a bankruptcy court lacked jurisdiction to enjoin the IRS from assessing a penalty under 26 U.S.C. § 6672 against corporate officers of the debtor. *See* 783 F.2d at 1549. Notwithstanding the bankruptcy court's finding that the assessment would adversely affect the corporate debtor's reorganization efforts, this Court concluded:

> The jurisdiction of the bankruptcy courts encompasses determinations of the tax liabilities of debtors who file petitions for relief under the bankruptcy laws. It does not, however, extend to the separate liabilities of taxpayers, who are not debtors under the Bankruptcy Code. It is therefore irrelevant that the penalty, if assessed, will adversely affect the corporate debtor's reorganization.

_____

[2](...continued)
these cases involved transactions between non-debtors that were necessary to consummation of a Chapter 11 plan.

8

*Id.* The FDOR argues that conferring an exemption on the Kissimmee transaction would contravene *Huckabee's* holding that bankruptcy courts lack jurisdiction to adjudicate the tax liabilities of third parties.

We disagree with the FDOR's contention that *Huckabee* is controlling. The bankruptcy court in *Huckabee* concluded that 11 U.S.C. § 505(a) gave it jurisdiction to adjudicate the tax liabilities of third parties arising under 26 U.S.C. § 6672. *See In re Huckabee*, 42 B.R. 306, 311 (Bankr. M.D. Ga. 1984) (noting with approval a series of decisions holding that 11 U.S.C. § 505(a) conferred authority on bankruptcy courts to adjudicate the tax liability of "an officer of the debtor when the tax in question is a 100 percent penalty under 26 U.S.C. § 6672 . . . for the debtor's failure to pay employment related taxes"). This Court rejected this reasoning in *Huckabee*, holding that the adjudication of a third party's tax liability under § 6672 fell outside the bankruptcy court's jurisdiction even if imposition of the tax liability would adversely affect the debtor's reorganization. By contrast, the issue presented in this case is whether a non-debtor is entitled to an exemption from Florida stamp and intangible taxes under *federal bankruptcy law*.

The adjudication of substantive entitlements created by bankruptcy law falls squarely within the core jurisdiction of bankruptcy courts. *See Carter v. Rodgers*,

220 F.3d 1249, 1253 (11th Cir. 2000) (noting that "'[a]rising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code"). If bankruptcy courts were divested of jurisdiction in any case in which a state sought to impose a stamp tax or similar tax on a non-debtor, states could circumvent the exemption provided under § 1146(c) by shifting the tax burden entirely to third parties even in those transactions involving the debtor. Several courts have conferred an exemption on non-debtors under § 1146(c) without discussing any jurisdictional concerns. *See*, *e.g.*, *In re CCA Partnership*, 70 B.R. 696, 698 (Bankr. D. Del. 1987) (holding that a state "may not divide liability for a stamp or similar tax along the parties to a transaction under a confirmed plan between debtor grantor and a solvent grantee"); *In re Cantrup*, 53 B.R. 104, 106 (Bankr. D. Colo. 1985) ("The exemption provided for in § 1146(c) was intended to apply to the making or delivery of an instrument of transfer, whether presented for recording by the grantor or grantee").

Further, we note that Florida's own regulatory interpretation of § 1146(c) implicitly recognizes that an exemption may extend to third parties. *See* Florida Admin. Code, Ch. 12B-4.054(31) (providing that a transfer under a Chapter 11 plan is exempt from state documentary stamp taxes "if it is done pursuant to a plan confirmed by the federal bankruptcy court under 11 U.S.C. § 1129 . . . and the

10

debtor is a party to the transaction"). Although the Florida regulation would restrict the exemption to transactions in which the debtor is a party, the regulation would not restrict the exemption solely to taxes imposed on debtors. This interpretation is difficult to reconcile with the FDOR's argument that conferring an exemption under § 1146(c) on Kissimmee, a non-debtor, would contravene *Huckabee's* holding that bankruptcy courts lack jurisdiction to adjudicate the tax liabilities on non-debtors. We therefore reject the FDOR's argument that *Huckabee* precludes a bankruptcy court from granting Kissimmee an exemption under § 1146(c).

The FDOR also relies on *In re Amsterdam Avenue Development Ass'n*, a New York bankruptcy court decision which holds that a third-party purchaser's grant of a mortgage to a bank in order to finance a purchase of estate property was not exempt under § 1146(c). 103 B.R. at 460. In concluding that § 1146(c) did not extend to the third-party mortgage, the *Amsterdam* court reasoned:

> In Section 1123 of the Bankruptcy Code, Congress listed the subjects that it expected could be embraced by a Chapter 11 plan. That list is not conclusive, is extremely broad, and indicates few limitations. But significantly missing from that list is any indication that Congress intended that a *transfer between non-debtors* be the subject of a plan . . . Section 1123, where Congress indicated its intentions as to the contents of Chapter 11 plans, evidences that Congress did not intend that section 1146(c) exemptions for transfers under a Chapter 11 plan apply to non-debtor transactions.

*Id.* at 460 (emphasis added). FDOR contends that the same reasoning applies in this case because nothing in § 1123 contemplates the refinancing transaction between third-parties that was employed under the Orlando plan. Notwithstanding the express terms of the Orlando plan, the FDOR contends that the bankruptcy court could not authorize or require Kissimmee to refinance its hotel with a third party lender. *Cf. In re Eastmet Corp.*, 907 F.2d 1487, 1489 (4th Cir. 1990) (noting that "it remains questionable whether the bankruptcy court could have required 'under the plan, that the purchasers [of estate property] execute the deed of trust to the third-party lenders"). Since, under FDOR's view, the Orlando plan could not require the Kissimmee transfer, the FDOR maintains that the transfer was not "under" the Orlando plan within the meaning of § 1146(c).[3]

We are not persuaded by this argument. The critical inquiry under § 1146(c) is whether the Kissimmee transaction was necessary to the consummation of the Orlando plan, regardless of whether the terms of the plan were binding on Kissimmee. If Kissimmee failed to carry through with the terms of the Orlando plan, the plan would not have been consummated. The debtors' proposed

---

[3]This is a jurisdictional argument in the sense that FDOR argues that a bankruptcy court lacks the authority to require under a Chapter 11 plan a third party to engage in a transaction with another third party involving non-estate property. Nevertheless, the argument is ultimately rooted in the construction of the phrase "under a plan," as FDOR contends that only those transfers that a bankruptcy court could require under a Chapter 11 plan are properly viewed as falling "under a plan."

12

refinancing would have failed, RCAP would have foreclosed on its mortgage, and the unsecured creditors would have received nothing. By contrast, the Chapter 11 plan involved in *Amsterdam* could have been consummated without the third party purchaser extending a mortgage to a bank. All that was required for the consummation of the plan in *Amsterdam* was the sale of the debtor's principal asset. The manner in which the purchaser of that asset financed its purchase was immaterial.

The Fourth Circuit in *State of Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777 (4th Cir. 1997), relied on a similar distinction in holding that a bankruptcy court order exempting transfers of estate property between a Liquidating Trust and third party purchasers was not a "transparently invalid" interpretation of § 1146(c). 123 F.3d at 784-86. State taxing authorities argued that while the transfers from the debtor to the trust were exempt, the transfers from the trust to the third party purchasers did not fall within the purview of § 1146(c) because "the debtors were not parties to the transfers." *Id*. at 784. In support of their argument, the state taxing authorities invoked *In re Eastmet Corp.*, in which the Fourth Circuit held that a purchase money deed of trust extended by a non-debtor to a bank to finance the purchase of estate property was not exempt under §

1146(c). *Id*. at 785. The Fourth Circuit concluded that *Eastmet* was distinguishable:

> Unlike the deed of trust financing for third-party purchasers that was involved in *Eastmet*, transfers from the Liquidating Trust to third-party purchasers were required by the plan of reorganization . . . It was the sole function of the Liquidating Trust to mediate the relationship between debtor, third-party purchaser, and creditor. By contrast, in *Eastmet*, the mortgages obtained by third-party purchasers *were not necessary to the reorganization effort*. Third parties could have financed their purchase or used their own capital to make them, and neither alternative was addressed in the *Eastmet* plan.

*Id. at* 785-86 (emphasis added). As in *Antonelli*, the Kissimmee transaction, although it involved two non-debtor parties, was necessary to the reorganization effort.

*Antonelli* is not precisely on point because the Fourth Circuit was addressing a collateral attack on the bankruptcy court's order. *See id. at* 784 (noting that "because we are faced with the question of whether the Taxing Authorities are barred from collaterally attacking a bankruptcy court order, the issue before us is not whether the bankruptcy court misconstrued the scope of § 1146(c)). Hence, the *Antonelli* court's inquiry was restricted to whether the bankruptcy court's order "had only a frivolous pretense to validity." *Id.* Additionally, the liquidating trust in *Antonelli* was distributing estate property while the Kissimmee transaction did not involve property of the estate. Finally,

14

the liquidating trust in *Antonelli* was a "procedural mechanism" created by the bankruptcy court to effect the distribution of the bankruptcy estate, while Kissimmee is a separate business entity. *Id*. at 782.

*Antonelli* nevertheless provides persuasive authority that an exemption under § 1146(c) may extend to transactions involving non-debtors. While the liquidating trust at issue in *Antonelli* was created solely to distribute estate property, nothing in *Antonelli* or the language of § 1146(c) suggests that a transfer must involve estate property to qualify for an exemption. Further, the Fourth Circuit analysis, in our view, hinged on its conclusion that the transfers between the liquidating trust and third party purchasers were necessary to consummation of the plan. Indeed, the Fourth Circuit distinguished its earlier decision in *Eastmet* on the ground that "the way in which third-party purchasers financed their purchases [in *Eastmet*] was *irrelevant* to the plan and their use of the deed of trust financing therefore was not 'under a plan.'" *Id.* at 785 (emphasis added). In contrast to *Eastmet*, the Kissimmee refinancing transaction was not "irrelevant" to the Orlando plan because the plan could not have been consummated absent that transfer. *Cf. Bel-Aire Invs., Inc.*, 142 B.R. at 996 (holding that § 1146(c) did not exempt refinancing by non-debtor because "this was not a transaction in *furtherance of consummation* of the terms of the Confirmed plan, but independent

of any of the specific terms of the Confirmed Plan") (emphasis added). Far from being irrelevant, the Kissimmee transfer was essential to consummation of the Orlando plan and therefore was "under the plan" within the meaning of § 1146(c).

Both parties also invoke various policy arguments to support their proposed interpretation of § 1143(c). Appellants emphasize that the Congressional policy behind § 1143(c) would be furthered if an exemption were granted in this case because such an exemption would encourage entities such as Berkshire to extend financing to debtors. The FDOR stresses the policy articulated by the Supreme Court that tax exemptions are to be construed narrowly. *See ,e.g.*, *United States v. Centennial Savings Bank FSB*, 499 U.S. 573, 583 (1991) ("Tax-exemption and . . . deferral provisions are to be construed narrowly."). The Supreme Court also has instructed lower courts that federal laws that interfere with state taxation schemes should be construed in favor of the state. *See*, *e.g.*, *California State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 851-52 (1989) (noting that "a court must proceed carefully when asked to recognize an exemption from state taxation that Congress has not clearly expressed").

Resort to such policy considerations perhaps would be appropriate if we concluded that the application of § 1146(c) to the Kissimmee transaction was ambiguous. We conclude, however, the plain language of § 1146(c) exempts from

16

stamp taxes or similar taxes any transfer that is necessary to the consummation of a Chapter 11 plan.  Nothing in the plain language of § 1146(c) restricts the exemption to transactions involving the debtor and estate property.  Orlando's Chapter 11 plan expressly authorized the Kissimmee-Berkshire transaction, and that transaction was necessary to the plan's consummation.  Accordingly, the district court's order is **REVERSED**.