# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 04-6045/04-6048 MN

_____

| | | |
|---|---|---|
| In re: Eveleth Mines, L.L.C., | * | |
| d/b/a Evtac Mining, L.L.C. | * | |
| | * | |
| Debtor. | * | |
| | * | |
| United Taconite, L.L.C. | * | Appeal from the United States |
| | * | Bankruptcy Court for the District |
| Appellant - Cross-Appellee | * | of Minnesota |
| | * | |
| v. | * | |
| | * | |
| | * | |
| State of Minnesota, | * | |
| Department of Revenue, | * | |
| | * | |
| Appellee - Cross-Appellant | * | |

_____

Submitted: December 1, 2004
Filed: December 23, 2004

_____

Before, SCHERMER, FEDERMAN, and MAHONEY, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

Appellant United Taconite, L.L.C. (United) filed a motion to enforce a sale order approving a sale of virtually all of the assets of debtor Eveleth Mines, L.L.C. (Eveleth). United appeals the order of the bankruptcy court denying it that relief. Appellee the Department of Revenue for the State of Minnesota (MDOR) cross-

appeals on the issue of whether the bankruptcy court had jurisdiction to enter the order in response to United's motion. We find that the Tax Injunction Act barred the bankruptcy court from exercising jurisdiction. We, therefore, remand with instructions that the bankruptcy court abstain.

FACTUAL BACKGROUND

On May 1, 2003, Eveleth, a mining company engaged in the production of taconite, filed a Chapter 11 bankruptcy petition.[1] On May 16, 2003, all mining operations ceased. On October 29, 2003, the bankruptcy court established bid procedures for the sale of substantially all of Eveleth's assets. On November 7, 2003, Eveleth and United filed the Asset Purchase Agreement (the Agreement) with the bankruptcy court. On November 26, 2003, after notice and a hearing, the court entered an order that, in part, approved the sale of all or substantially all of Eveleth's assets free and clear of interests (the Sale Order). More specifically, the Sale Order provided as follows:

> The Buyer shall not assume, and shall be deemed not to have assumed, . . . (viii) any taconite production tax attributable to taconite ore or iron sulfides mined by Debtor, to the mining of such taconite ore or iron sulfides by Debtor, or to the iron ore concentrate produced by Debtor that has been or may in the future be assessed by a Taxing authority for any period pursuant to Minn Stat. §§ 298.24-298.27.[2]

On December 3, 2003, Eveleth and United closed the sale. United agreed to pay cash in the amount of $3 million and to assume approximately $40 million in liabilities.

---

[1]On May 15, 2003, Thunderbird Mining Company also filed for Chapter 11 relief. The cases are being jointly administered.

[2]Appellant's Appendix, Ex. B, Sale Order at ¶ F(viii), pg. 9-10.

United began production immediately upon closing the sale, and produced 78,162 tons of taconite prior to January 1, 2004.

On January 30, 2004, United completed its 2003 Minnesota Taconite Production Tax Forms and filed them with MDOR. On February 13, 2004, MDOR notified United that it must pay the sum of $335,921 for its portion of the 2003 Taconite Production Tax.

On February 17, 2004, United, by motion, asked the bankruptcy court to enter an order "specifically enjoining forever . . . any action to collect from [United] any tax attributable to or calculated based, in whole or part, on [the] Debtor's operations. . . ."[3] On March 17, 2004, the court held a hearing at which MDOR raised the issue of subject matter jurisdiction. The court offered the parties an opportunity to brief that issue and took the matter under advisement. On July 30, 2004, the court found that it had jurisdiction to interpret the Sale Order, and that the Tax Injunction Act did not bar it from exercising that jurisdiction. Nevertheless, the court went on to hold that United is not entitled to an order directing the state courts as to how its tax liability should be determined. United appeals the portion of the decision denying its motion to enforce the Sale Order, and MDOR appeals the portion finding that the court had jurisdiction.

## STANDARD OF REVIEW

The question of subject matter jurisdiction is subject to *de novo* review.[4] When subject matter jurisdiction is at issue, we are required to reach the jurisdictional question before turning to the merits.[5]

---

[3]Appellant's Appendix, pg. 1.

[4]*Hoffman v. Bullmore (In re Nat'l Warranty Insurance Risk Retention Group)*, 384 F.3d 959, 962 (8th Cir. 2004).

[5]*In re Hechinger Investment Co. of Delaware, Inc.*, 335 F.3d 243, 249 (3rd Cir. 2003).

## DISCUSSION

We begin with a brief description of how MDOR assesses the Taconite Production Tax. Minnesota imposes a tax on "taconite . . . and upon the mining and quarrying thereof, and upon the production of iron ore concentrate therefrom, and upon the concentrate so produced."[6] Each taconite producing facility is assessed this tax in lieu of property taxes.[7] The total taconite tax for any given year is calculated by using a three-year average of the total production at a facility.[8] The averaging method is used to stabilize the tax receipts.

United objected to the averaging method. It claims it purchased the assets of Eveleth free and clear of any production tax calculated on Eveleth's production. It claims that it began production on December 3, 2003, therefore, the average production for the years 2001 and 2002, for purposes of the three-year average, should be zero. Based on United's argument, MDOR should have assessed it the sum of $54,792 as Taconite Production Tax for 2003, not $335,921. It arrived at this calculation by assuming its average production for 2003 was 26,054 tons (the 78,162 tons produced in 2003 by United after the closing plus zero tons for 2001 and 2002 equals average tonnage of 26,054). The per-ton tax is $2.103 resulting in a liability of $54,792. This same method of calculation, using zero production for 2002 and only United's production for 2003 would have a significant impact on United's tax bills for 2004 and 2005 as well. United argues that MDOR's formula would exceed the proper tax owed under its interpretation of the Sale Order by more than $5.4 million over the relevant three-year period.

---

[6] Minn. Stat. Ann. § 298.24 (2002).

[7] *Id.* at § 298.25.

[8] *Id.* at § 298.24(1)(d).

MDOR argued in a post-trial brief that the bankruptcy court did not have subject matter jurisdiction to enforce the Sale Order because this is a dispute between two non-debtor parties that has no impact on the bankruptcy estate. Alternatively, MDOR claims that, even if the bankruptcy court retained jurisdiction to interpret its own order, the Tax Injunction Act barred it from exercising that jurisdiction.

We begin with the jurisdictional issues. Bankruptcy courts' jurisdiction flows from 28 U.S.C. § 1334, which vests jurisdiction in the district courts, and 28 U.S.C. § 157(a), which authorizes district courts to refer bankruptcy cases to the bankruptcy court. Section 1334 reads in relevant part as follows:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original, but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.[9]

Section 28 U.S.C. § 157(a) reads as follows:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

Both sides agree that the bankruptcy court had jurisdiction to enter the Sale Order. Since section 363 of the Bankruptcy Code (the Code) specifically authorizes the court to approve sales of a debtor's property, such orders come within the court's

[9] 28 U.S.C. § 1334(a) and (b).

jurisdiction over "all civil proceedings arising under title 11 . . . ."[10] The crux of United's jurisdictional argument is that since the court had jurisdiction to enter the Sale Order, it must also have jurisdiction to interpret and enforce that order. There is ample precedent for this position, including our own.[11] In *NWL Holding, Inc. v. Eden Center (In re Ames Department Stores, Inc.)*,[12] the court had entered an order assigning debtor's leasehold interest, and a dispute later arose between the debtor's assignee and the landlord over interpretation of the terms of the lease. Although the debtor was not involved in the dispute, and not affected by the outcome, the bankruptcy court found it had jurisdiction, holding that a proceeding "arises in" a bankruptcy case when it involves efforts to "implement, gain the fruits of, and to enforce an order of the bankruptcy court."[13] Since United's motion to enforce the Sale Order arose in a proceeding under title 11, and since United seeks to gain the fruits of enforcement of that Order, we conclude that the bankruptcy court correctly determined that it had jurisdiction to consider the motion. There are, however, limits to the court's power to exercise that jurisdiction.

The Tax Injunction Act provides that a district court, or a bankruptcy court by referral, "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state."[14] The Tax Injunction Act does not mention jurisdiction, because

---

[10] 28 U.S.C. § 1334(b).  *See also* 28 U.S.C. § 157(b)(2)(N).

[11] *Koehler v. Grant (In re Grant)*, 213 B.R. 567, 569 (B.A.P. 8th Cir. 1997) (holding that a court retains jurisdiction, after the case is closed, to enter contempt sanction for violation of a previous order). *See also, Williams v. Citifinancial Mortgage Co. ( In re Williams)*, 256 B.R. 885, 892 (B.A.P. 8th Cir. 2001).

[12] 317 B.R. 260 (Bankr. S.D.N.Y. 2004).

[13] *Id.* at 269.

[14] 28 U.S.C. § 1341.

it is a rule of abstention.[15] As the court in *Clark* explains, when "courts have said that the Tax Injunction Act deprives a federal court of jurisdiction to hear state tax matters, they were using jurisdiction for shorthand for power or authority to grant relief."[16] The court goes on to distinguish the subtle difference between lack of jurisdiction to decide a matter, and lack of power to grant relief:

> When a court lacks power to grant relief, the effect is the same as if the court lacked jurisdiction, and vice versa. But a court may possess jurisdiction while lacking the authority to use it. Jurisdiction is a prerequisite to, not the equivalent of, a court's authority to grant relief.[17]

Thus, the issue is not whether the bankruptcy court has jurisdiction to enforce the Sale Order, but whether it should have abstained from exercising that jurisdiction because the Tax Injunction Act requires deference to state tax procedures.

United contends that the Tax Injunction Act is not applicable because numerous provisions of the Code authorize bankruptcy courts to routinely adjudicate the rights of state taxing authorities. For example, United points out that section 1146(c) of the Code specifically grants authority to bankruptcy courts to prevent the imposition of certain state mortgage registration taxes.[18] In *State of Florida,*

---

[15]*Bank of New England Old Colony, N.A. v. Clark*, 796 F. Supp. 633, 637 (D. R.I. 1992), *affirmed*, 986 F.2d 600 (1st Cir. 1993).

[16]*Id.* at 637 (emphasis eliminated).

[17]*Id.*

[18]That section provides that "the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(c).

*Department of Revenue v. T.H. Orlando Ltd, et al (In re T.H. Orlando, Ltd.),*[19] the debtor owned three hotels threatened by foreclosure when it filed for Chapter 11 relief. One lender agreed to satisfy the mortgage for a reduced amount provided Kissimmee Lodge, Ltd. (Kissimmee), a hotel adjacent to debtor's hotels, would also refinance its mortgage with the same lender. Kissimmee agreed, and under that arrangement the court confirmed debtor's Plan of Reorganization.[20] That plan, as authorized by section 1146 of the Code, provided that the recording of the refinancing documents would not be subject to Florida's mortgage registration tax. After the plan was consummated the Florida Department of Revenue (FDOR) assessed a stamp tax and an intangible tax against Kissimmee in conjunction with the refinancing. Kissimmee paid the tax and then filed suit in state court seeking declaratory relief. FDOR removed the proceeding to the bankruptcy court. On appeal, the court held that "the adjudication of substantive entitlements created by bankruptcy law falls squarely within the core jurisdiction of the bankruptcy courts."[21] In confirming the plan the court had granted Kissimmee, the nondebtor, an exemption from state tax, which section 1146(c) specifically authorizes the bankruptcy court to grant. Thus, the bankruptcy court had the specific authority to enter its order, and the more general Tax Injunction Act did bar it from enforcing that order. No such specific authority exists here.

United next argues that section 505(a) of the Code grants the bankruptcy court jurisdiction to determine the amount of the tax MDOR can impose on a nondebtor. Section 505(a) does permit the bankruptcy court to determine the amount of tax assessed:

---

[19]___ F.3d ___, 2004 WL 2711888 (11th Cir. Nov. 30, 2004).

[20]*Id.* at *2-3.

[21]*Id.* at *4-5.

(a)(1)Except as provided in paragraph (2) of this subsection, the court may determine the amount of legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.[22]

That power, however, is limited to the tax liabilities of debtors.[23] Thus, section 505(a) does not encompass the adjudication of United's tax liability.[24] Indeed, the court in *In re Huckabee Auto Co.*, found that the adjudication of a third party's tax liability falls outside a bankruptcy court's jurisdiction, even if imposition of the tax liability would adversely affect the debtor's reorganization,[25] which is not the case here.

United cites several other Code sections as examples of provisions that enable bankruptcy courts to interfere in the state tax process. These include the imposition of an automatic stay on taxing authorities,[26] the granting of a higher priority to certain

---

[22]11 U.S.C. § 505(a).

[23]*United States v. Huckabee Auto Co. (In re Huckabee Auto Co.)*, 783 F.2d 1546, 1549 (11th Cir. 1986) (holding that the "jurisdiction of the bankruptcy courts encompasses determinations of the tax liabilities of debtors who file petitions for relief under the bankruptcy laws. It does not, however, extend to the separate liabilities of taxpayers who are not debtors under the Bankruptcy Code").

[24]*Id. See also State of Florida, Department of Revenue v. T.H. Orlando Ltd, et al (In re T.H. Orlando, Ltd.)*, 2004 WL 2711888 * 3 (11th Cir. Nov. 30, 2004) (where the court distinguished between the bankruptcy court's jurisdiction to decide whether a non-debtor is entitled to an exemption for a stamp tax or similar tax, which is specifically provided for by the Code, and the lack of jurisdiction to decide a non-debtor's liability for employment taxes, which is not specifically provided for by the Code).

[25]*Huckabee Auto Co.*, 783 F.2d @ 1549.

[26]11 U.S.C. § 362(a)(6).

creditors than is accorded to tax claims,[27] the determination that tax claims are dischargeable,[28] and the issuance of injunctions to prevent state courts from collecting discharged tax debts.[29] As with 1146(c) and 505(a), however, none of these provisions is applicable here.

The blending of the Tax Injunction Act and the Code was considered by the Ninth Circuit in *Goldberg v. Ellett* (*In re Ellett*).[30] There, a Chapter 13 debtor sought a declaratory judgment that his prepetition state tax debt had been discharged in his bankruptcy case, as well as an injunction prohibiting the state from collecting such tax. In holding that the bankruptcy court had jurisdiction to enter the injunction against the state, the Circuit Court held that "the general dictates of the [Tax Injunction] Act do not defeat the specific powers Congress has bestowed on the federal courts under the Bankruptcy Code."[31] United argues that section 363(f) of the Code, which authorizes the court to approve sales of a debtor's assets, can be used to defeat the provisions of the Tax Injunction Act. We disagree, since nothing in that section provides for a specific grant of jurisdiction to determine the tax liability of a nondebtor.[32]

United's motion is captioned as a motion to enforce the bankruptcy court's Sale Order. Nonetheless, in order to accord United the relief it sought, the bankruptcy court would have been forced to order MDOR to restrain the manner in which it

---

[27]11 U.S.C. § 507(a).

[28]11 U.S.C. § 523(a)(1).

[29]11 U.S.C. § 524.

[30]254 F.3d 1135 (9th Cir. 2001).

[31]*Id.* at 1148.

[32]*See* 11 U.S.C. § 363(f).

assessed and collected United's Taconite Production Tax. Thus, the substance of the relief sought triggers the Tax Injunction Act. The Tax Injunction Act is "a vehicle to limit drastically federal district court jurisdiction to interfere with so important a [state] concern as the collection of taxes."[33] Once the Tax Injunction Act is triggered, the federal court may only exercise its jurisdiction if it finds that a plain, speedy and efficient remedy cannot be had in the state court. Here, the bankruptcy court so found, so we now turn to the basis for that determination.

As the bankruptcy court recognized, application of the Tax Injunction Act turns on the procedural safeguards provided by the state courts.[34] A state court remedy is plain, speedy, and efficient, within the meaning of the statute, if it provides a taxpayer with a full hearing and a judicial determination at which it may raise any and all constitutional objections to the tax.[35] The phrase "plain, speedy, and efficient" must be narrowly construed.[36] The burden rests on the taxpayer, here United, to show facts sufficient to overcome the restraint of the Tax Injunction Act.[37] A state law remedy is plain, speedy, and efficient if it provides for an appeal from the determinations of the state agency by any dissatisfied party.[38] The bankruptcy court held that

---

[33]*Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522, 101 S. Ct. 1221, 1234, 67 L. Ed. 2d 464 (1981).

[34]*California v. Grace Brethren Church*, 457 U.S. 393, 411, 102 S. Ct. 2498, 2509, 73 L. Ed. 2d 93 (1982).

[35]*Hawaiian Telephone Co. v. State Dept. of Labor and Indus. Relations*, 691 F.2d 905, 112 (9th Cir. 1982).

[36]*Amos v. Glynn County Board of Tax Assessors*, 347 F.3d 1249, 1255 (11th Cir. 2003) (citing *California v. Grace Brethren Church*, 457 U.S. at 413, 102 S. Ct. at 2510)).

[37]*Id.*

[38]*Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 514, 101 S. Ct. 1221, 1230, 67 L. Ed. 2d 464 (1981).

Minnesota's system for reviewing tax assessments is not plain, speedy, and efficient, concluding that there is uncertainty as to whether the Minnesota courts would appropriately consider the impact of the Sale Order on the determination of United's tax liability. In so holding, the court also noted that the matter was already before it, and so it could rule more quickly than the state court. But, the state remedy need only be "'plain, speedy and efficient,'" it need not be plainer, speedier and more efficient than an alternative forum."[39] And judicial economy does not itself justify federal jurisdiction.[40] We, therefore, must consider whether the bankruptcy court correctly found that Minnesota could not provide United with a plain, speedy, and efficient tax assessment process that is capable of adequately considering the impact of the Sale Order.

Minnesota's Tax Court has jurisdiction to hear "all questions of law and fact arising under the tax law of Minnesota."[41] If a constitutional issue is raised, the Tax Court must first transfer that issue to the state district court, which may decide the issue or refer it back to the Tax Court for decision.[42] This process is called the "Erie Transfer Procedure." Pursuant to the Erie Transfer Procedure, the Tax Court transfers a case raising a constitutional issue to the state district court, a court of general jurisdiction.[43] The district court may retain the case, or may return it to the Tax Court. After such a transfer, the Tax Court acquires the general jurisdiction of the district

---

[39]*Ashton v. Cory*, 780 F.2d 816, 821 (9th Cir. 1986).

[40]*Lawrence E. Miller v. Kemira (In re Lemco Gypsum, Inc.*), 910 F.2d 784, 789 (11th Cir. 1990).

[41]Minn. Stat. Ann. § 271.01, subd. 5 (2002).

[42]*Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 199 (Minn. 2000); *Erie Mining Co. v. Comm'r of Revenue*, 343 N.W.2d , 261 264 (Minn. 1984).

[43]Minn. Stat. Ann. § 484.01 (2002).

court to decide issues beyond its original jurisdiction.[44] There is, therefore, a procedure in Minnesota to assure that both the Tax Court and the district court have jurisdiction to decide all issues raised.

Decisions of the Tax Court are accorded the same finality and deference as those of the state district courts.[45] A taxpayer may obtain review of a decision of the Tax Court, as a matter of right, by the Minnesota Supreme Court, without first seeking review by the Minnesota Court of Appeals.[46] And, ultimately, any federal question presented to the Minnesota Supreme Court is subject to review by the United States Supreme Court.[47]

United points out that the United States Supreme Court has held that "uncertainty surrounding a state-court remedy lifts the [Tax Injunction Act] bar to federal-court jurisdiction."[48] In *Rosewell*, the court held that an Illinois remedy, which required owners contesting their property taxes to pay such taxes under protest and, if successful, to obtain a refund without interest in two years is, nevertheless, a plain, speedy, and efficient remedy. The taxpayer had contended that the state's assessment procedure deprived her of equal protection and due process secured by the Fourteenth Amendment of the United States Constitution.[49] In holding that the Illinois procedure

---

[44]*Wilson*, 619 N.W.2d at 199: *Erie*, 343 N.W.2d at 264.

[45]*McCannel, et al v. Hennepin County (In re McCannel)*, 301 N.W.2d 910, 919 (Minn. 1980).

[46]Minn. Stat. Ann. § 271.10, subd. 1 (2002).

[47]28 U.S.C. § 1257(a).

[48]*Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 517, 101 S. Ct. 1221, 1231, 67 L. Ed. 2d 464 (1981) (quoting *Hillsborough v. Cromwell*, 326 U.S. 620, 625-626, 66 S. Ct. 445, 449, 90 L. Ed 358 (1946).

[49]450 U.S. at 510, 101 S. Ct. at 1228.

was plain, speedy, and efficient, the Court noted that under the Illinois procedure, there was no question that the state court would hear and decide any federal claim.[50] By contrast, in *Hillsborough v.Cromwell*,[51] the Court had held that protection of federal rights was uncertain because the State Board of Tax Appeals had no right to pass on constitutional questions, the allowance of a writ of certiorari to the Board from the New Jersey Supreme Court was only discretionary, and the refusal of a writ was not judicially reviewable by the Court of Error and Appeals.[52] United, however, bears the burden of proving that the Minnesota procedure is not plain, speedy, and efficient. United does not argue that it would be prohibited from asking the state court to consider the Sale Order in making its determination. Instead, United argues that it is "anything but certain whether Minnesota courts will give proper deference to the effect of the § 363 sale and the specific terms of the sale order at issue. . . . "[53] A taxpayer's lack of confidence in the state court process is not, however, the standard to be applied. We find that the bankruptcy court incorrectly held that the Minnesota tax appeal procedures are not plain, speedy, and efficient. We conclude, therefore, that the Tax Injunction Act bars the bankruptcy court from granting the relief sought by United.

We remand with instructions for the bankruptcy court to enter an order abstaining in favor of the Minnesota courts.

_____

[50]450 U.S. at 517, 101 S. Ct. at 1231.

[51]326 U.S. 620, 66 S. Ct. 445 (1946).

[52]326 U.S. at 625-26, 66 S. Ct. at 449.

[53]Reply Brief of United at pg. 9.